560 F.2d 792
 CALVERT FIRE INSURANCE COMPANY, Plaintiff-Petitioner,
v.
Honorable Hubert L. WILL, Judge of the United States
District Court for the Northern District of
Illinois, Respondent,
and
American Mutual Reinsurance Company, Defendant-Respondent.
 No. 76-1495.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 16, 1976.
Decided Aug. 15, 1977.
 
 Michael L. Weissman, Chicago, Ill., Louis Loss, Cambridge, Mass., for plaintiff-petitioner.
 Thomas J. Weithers, Chicago, Ill., for respondent.
 Before SWYGERT and WOOD, Circuit Judges, and GRANT, Senior District Judge.[1]
 SWYGERT, Circuit Judge.
 
 
 1
 The question before us is whether a federal court in a pending suit may await the outcome of a state court action between the same parties in which all but one of the issues are identical, that one issue being a claim for damages over which the federal court has exclusive jurisdiction. The question forms the basis for a petition for a writ of mandamus against United States District Judge Hubert L. Will of the Northern District of Illinois. We grant the writ.
 
 
 2
 Plaintiff-petitioner Calvert Fire Insurance Company writes property and casualty insurance. Calvert's antagonist, American Mutual Reinsurance Company, engages in the business of reinsurance. For many years American Mutual has operated a reinsurance pool known as the "Multiple Line Pool." Fire and casualty policies underwritten by primary insurance companies are reinsured by American Mutual which in turn lessens its reinsurance risks by enlisting other insurance companies to enter into a pool arrangement. These companies earn a pro rata share of the excess of American Mutual's premiums over the sum of losses paid primary insurers and a management fee. If losses exceed premiums the pool members are obligated to indemnify American Mutual.
 
 
 3
 Calvert is a member of the pool. Prior to its entrance in early 1974, there were discussions between Calvert and American Mutual officials during which Calvert asserts it sought financial data from American Mutual. Although apparently available, the data was not furnished. In March 1974 Calvert received from American Mutual its first statement which reflected extremely high reserves for incurred but not reported losses for the months of January and February 1974. In April American Mutual's 1973 annual report showed an inordinately high loss and expense ratio. Calvert, having found itself pro rata accountable for the pool's substantial losses, concluded that it had been fraudulently induced to participate in the pool because of American Mutual's withholding of material information during the negotiation of the agreement. Calvert notified American Mutual that it intended to rescind its agreement to participate in the pool. Simultaneous litigation soon followed in both state court and federal court. A summary of the state and federal actions is set forth in parallel columns.
 
 
 4
 American Mutual v. Calvert Calvert v. American Mutual
 Circuit Court of Cook United States District Court
 County, Illinois For the Northern District
 of Illinois
------------------------------------------- ---------------------------------
July 3, 1974
 American Mutual sued
 Calvert, seeking a declaratory
 judgment that the pool arrangement
 was in full force and effect.
January 10, 1975 January 10, 1975
 Calvert filed an answer Calvert sued American
 alleging that the agreement Mutual, seeking (1) rescission
 was void because American Mutual of the pool agreement
 violated the 1933 Securities on the same grounds as
 Act, the 1934 Securities those listed in its state court
 Exchange Act, the Illinois answer and (2) $2,000,000
 Securities Law, the Maryland monetary damages on the
 Securities Law, and was guilty of same grounds as those listed
 common law fraud. in its state court counterclaim
 as well as for alleged
 With its answer, violations of Rule 10b-5 of
 Calvert filed a counterclaim the Securities Exchange Act.
 seeking $2,000,000
 monetary damages, asserting
 as grounds for such relief all of the
 defenses asserted in its answer except
 the alleged violations of Rule 10b-5
 of the Securities Exchange Act.
 
 
 5
 On February 5, 1975 American Mutual moved to abate or, in the alternative, to dismiss the federal court action. The abatement motion was based on the fact that six months previously American Mutual had initiated its declaratory judgment action in the Circuit Court of Cook County. The motion to dismiss was based on American Mutual's contention that the reinsurance contract executed by the parties did not constitute a sale by American Mutual of a security under either the Securities Act of 1933 or the Securities Exchange Act of 1934.
 
 
 6
 On May 6, 1975 Judge Will issued a memorandum opinion and order on American Mutual's motion to abate. The order stayed all claims alleged in Calvert's complaint, except its claim for money damages under Rule 10b-5 of the Securities Exchange Act of 1934. The district court's jurisdiction over the latter claim was specifically retained by the terms of the order. On May 9, 1975 Judge Will heard oral argument on the primary issue underlying the claim for damages: whether a participatory interest in the reinsurance pool is a security. The judge has not ruled on this issue.
 
 
 7
 On June 16, 1975 the judge in the state court declaratory judgment action ruled that participatory interests in the reinsurance pool are not securities and that application of the federal securities laws was barred by the McCarren-Ferguson Act, 15 U.S.C. §§ 1011-15. Calvert appealed from this ruling to the Illinois Appellate Court, which affirmed the trial court's decision.
 
 
 8
 On two occasions subsequent to the abatement order Calvert requested the district judge to reconsider his order. He refused the requests, and also refused to rule on the claim for damages under Rule 10b-5 over which he retained jurisdiction. He has declined to permit interlocutory review of his order.
 
 
 9
 Calvert recognizes that the district court's order staying proceedings on most of Calvert's federal complaint is not appealable because it is not a final order. See Cotler v. Inter-County Orthopaedic Ass'n, P.A., 526 F.2d 537, 540 (3d Cir. 1975). It therefore seeks review of the district court's action by petitioning for a writ of mandamus. In its petition it asks us to require Judge Will to adjudicate its entire claim both for equitable relief and for damages under the Securities Exchange Act of 1934.[2] Calvert is therefore partially seeking reversal of the district court's decision to stay Calvert's claim for equitable relief and partially seeking an order compelling Judge Will to immediately decide the claim for damages over which he has retained jurisdiction.[3]
 
 
 10
 * A writ of mandamus is an extraordinary remedy which we will not easily grant. In a fairly recent case, Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967), the Supreme Court advised the lower federal courts: "(T)he party seeking mandamus has 'the burden of showing that its right to issuance of the writ is "clear and indisputable." ' (citations omitted)." With these preliminary observations in mind, we turn to the merits of the petition.
 
 II
 
 11
 The district court relied principally upon this court's decision in Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir. 1970). In Aetna the district court stayed an action brought under Rule 10b-5 in deference to state court proceedings involving the same transaction in which the identical Rule 10b-5 claim was raised as an affirmative defense. We sustained the district court's action, holding that the stay was a proper exercise of "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." 430 F.2d at 755.
 
 
 12
 The district court's reliance on Aetna was not misplaced. Although Calvert struggles to distinguish the case at bar from Aetna, the factual parallelism between the two cases is overwhelming. Thus, the district court's order was correct at the time it was entered.
 
 
 13
 Since that time, however, the Supreme Court has decided Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in which it thoroughly analyzed the law with respect to contemporaneous exercise of concurrent jurisdiction by state and federal courts. If Colorado River controls the instant case, we must apply it even though it was decided after the district court had acted. United States v. Fitzgerald, 545 F.2d 578, 581-82 (7th Cir. 1976).
 
 
 14
 In Colorado River the Supreme Court stated that, in cases of contemporaneous exercise of concurrent jurisdiction by a state court and a federal court, the federal court generally has an obligation to exercise its jurisdiction. The Court reaffirmed the rule of McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910), that the pendency of a state court action is not a bar to an action in a federal court involving the same issues. It held that only in exceptional circumstances should a federal court dismiss an action because of the pendency of state proceedings involving the same issues. Circumstances which might lead to such a dismissal include: (1) the assumption of jurisdiction over a res by the state court; (2) the desirability of avoiding piecemeal litigation; (3) the inconvenience of the federal forum; and (4) the order in which concurrent jurisdiction was obtained by the two forums. None of these factors alone is determinative and "(o)nly the clearest of justifications will warrant dismissal." Colorado River, 424 U.S. at 819, 96 S.Ct. at 1247.
 
 
 15
 After making it clear that only exceptional circumstances would ever warrant deference to a state court in cases of concurrent state and federal jurisdiction, the Court found such circumstances in Colorado River. In that case the United States brought an action in federal court asserting water right claims. One of the defendants attempted to make the United States a party to a state action in order to adjudicate all of the Government's claims. The most important factor warranting dismissal of the federal action was the existence of the McCarran Amendment, 43 U.S.C. § 666, providing for consent to join the United States in a state suit for adjudication or administration of water rights. The federal policy evinced by that amendment was one of avoiding piecemeal litigation and the disruption of a complicated and extensive system of state allocation and adjudication of water rights, such as the one employed by the State of Colorado.
 
 
 16
 The instant case differs from Colorado River in that the district court did not dismiss Calvert's federal action. Instead, it stayed[4] all but the claim for damages under Rule 10b-5, over which it retained jurisdiction but refused to decide. We do not find this distinction to be important. It is clear that the district court, acting properly under Aetna, intended to defer on grounds of federalism to the result reached in the state proceedings. Thus, the effect of the district court's order was to preclude federal resolution of Calvert's federal claims, making the order equivalent to a dismissal for purposes of this case. We therefore hold that Colorado River is applicable and turn to a determination of whether the exceptional circumstances which Colorado River requires in order to justify federal deference to state proceedings are present.
 
 
 17
 We do not find any exceptional circumstances in the instant case. The federal forum was not inconvenient for the parties, and the state court did not obtain concurrent jurisdiction before the federal court since the counterclaim and the federal action were filed on the same day. Piecemeal litigation can best be avoided by the federal court, which has exclusive jurisdiction over the Rule 10b-5 claim. Finally, the strong federal interest in the regulation of securities and the grant of exclusive jurisdiction in the federal courts to adjudicate claims under the Securities Exchange Act of 1934 are compelling factors which weigh heavily against deference to state proceedings.
 
 
 18
 The rationale developed in Aetna can no longer stand in light of the Supreme Court's decision in Colorado River. Aetna therefore is overruled as the law of this circuit.[5]
 
 
 19
 We conclude that the district court should neither have delayed the adjudication of Calvert's Rule 10b-5 claim for damages nor stayed Calvert's other federal claims. Accordingly, we grant the writ of mandamus and order the district court to proceed immediately with Calvert's claim for damages and equitable relief under the Securities Exchange Act of 1934.[6] We need not decide whether the state proceedings between Calvert and American Mutual, if they are now concluded, would be res judicata as to those portions of Calvert's federal complaint which the district court had stayed and which we are now ordering it to reinstate. Nor need we reach the difficult issue of whether the conclusion of the state proceedings would have a collateral estoppel effect on the Rule 10b-5 claim for damages over which the court had retained jurisdiction but declined to resolve. What we are deciding is that the district court should not have deferred to the state court on grounds of federalism in light of Colorado River.
 
 
 20
 The petition for a writ of mandamus is granted and the writ shall issue forthwith.
 
 
 
 [1]
 The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [2]
 The petition does not mention the claims for equitable and monetary relief under the Securities Act of 1933 or state law contained in Calvert's federal complaint
 
 
 [3]
 Calvert's position is that: "Although Judge Will's Opinion states that Calvert's Rule 10b-5 claim is 'viable,' his subsequent rulings have, in effect, stayed that claim as well."
 
 
 [4]
 The district court granted American Mutual's motion to "abate," but stated specifically that it was "staying" all but the Rule 10b-5 damages claim. In Aetna, we defined abatement "as being the overthrow of an action which defeats the action for the present but does not debar the plaintiff from commencing it in a better way." 430 F.2d at 754. We assume that Judge Will meant to use "stay" as a synonym for "abate."
 
 
 [5]
 This opinion has been circulated among all judges in regular active service. A majority of the judges did not favor rehearing en banc on the question of overruling Aetna
 Circuit Judge Pell, however, filed the following statement in which Chief Judge Fairchild and Circuit Judges Tone and Bauer joined:
 The panel's opinion in this case was circulated to all judges of the court in regular active service. Four of the eight judges voted to rehear the case en banc insofar as it overruled Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir. 1970). In simple terms, the panel's opinion holds that the rationale developed in Aetna can no longer stand in the light of Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In overruling Aetna, as opposed to finding that that case was good law but that the district court had abused its discretion in granting a stay of the federal litigation, the panel has apparently taken from the district court the power to stay proceedings as "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel and for litigants." Aetna, 430 F.2d at 755. Under Aetna, "(h)ow this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance." Id.
 These principles announced in Aetna were not particularly new. The foregoing extracts from Aetna relied upon Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), which case ironically, is cited in Colorado River, 424 U.S. at 818-19, 96 S.Ct. 1236, for much the same proposition. Indeed, the matter of a federal stay when a similar action between the same parties is pending in a state court is not itself a new problem. See the extensive 136 page Annotation, Stay of Action in Federal Court Until Determination of Similar Action Pending in State Court, 5 A.L.R. Fed. 10 (1970).
 It would seem that the judicial demise of the rationale of Aetna, a salutary rationale in the context of the overburdened federal courts, would warrant en banc reconsideration at the very least, bearing in mind that during the seven years of Aetna's viability it has been followed and relied upon here and elsewhere and that its application would at most assume the form of a discretionary stay and not a dismissal as in Colorado River. In that case, of course, the Court upheld the dismissal of the federal action.
 It is difficult to think that the Colorado River language that "(o)nly the clearest of justification will warrant dismissal," 424 U.S. at 819, 96 S.Ct. at 1247, and the other repeated references to dismissal, overlooked the technical, but significant, differences between a stay of proceedings and a dismissal. In applying Aetna, this court has made it clear that "a stay of the federal proceedings is the appropriate response rather than a dismissal of the complaint." Weber v. Consumers Digest, Inc., 440 F.2d 729, 732 (7th Cir. 1971).
 Unfortunately for the continued availability to district court judges of the Aetna concept of the weighing of competing interests, the posture of the case before the Calvert panel, that of a petition for mandamus, precluded a review of the discretionary stay granted below. The Calvert panel unnecessarily, it would appear, found itself in the Hobson's choice position because of its agreement with the petitioner that the stay order was not appealable. The result, however, is inconsistent with prior authority in this circuit to the effect that there is appellate jurisdiction for review of stay orders, Drexler v. Southwest DuBois School Corporation, 504 F.2d 836, 838 (7th Cir. 1974) (en banc); accord, Vickers v. Trainor, 546 F.2d 739, 741 (7th Cir. 1976), neither of which the panel adverted to nor purported to overrule. See also Note, Appealability of Abstention Orders, 10 Ind.L.Rev. 556, 565 (1977). It would seem to be a matter of regret that the important issue here involved was resolved in the context of allowing the extraordinary writ of mandamus to serve as a substitute for an appeal.
 
 
 [6]
 As we have already noted, Calvert's petition did not refer to its claim under the Securities Act of 1933 which the district court had stayed. See note 2 supra. The logic behind our holding in this case supports the conclusion that the stay of 1933 Act claims, as well as the 1934 Act claims, was improper. Although we will not order the district court to immediately decide the 1933 Act claims because the issue is not before us, the district court should consider revoking the stay of the 1933 Act claims if Calvert moves for such relief