**CALVERT FIRE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**AMERICAN MUTUAL REINSURANCE COMPANY, Defendant-Appellee.**

**No. 78–2638.**

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1979.

Decided June 27, 1979.

Rehearing and Rehearing In Banc Denied Sept. 19, 1979.

Louis Loss, Cambridge, Mass., for plaintiff-appellant.

Thomas J. Weithers, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

This case raises questions relating to the power of a federal district judge to stay a federal suit involving questions of federal law which have already been decided in a parallel state suit [1] when he determines that the federal suit has been brought to delay the state proceeding. Such a deferral to a

---

1. A suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum, thus making it likely that judgment in one suit will have a res judicata effect in the other suit. Here the parties and issues are identical in the state and federal suits, although the posture of the parties is reversed, so that the defendant in the state suit has become the plaintiff in the federal suit.

state court for reasons of "wise judicial administration" not falling within the ambit of the abstention doctrine was first recognized by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), although the power of one federal court to defer to another federal court for such reasons had long been recognized by the Supreme Court.[2] Specifically, we must decide how such a power would be affected by the fact that the federal plaintiff seeks relief under the Securities Exchange Act of 1934, which contains a provision vesting exclusive jurisdiction in the federal courts, although that provision has not been interpreted to extend to the particular type of 1934 Act relief (rescission) sought by Calvert in its federal suit.

American Mutual Reinsurance Company (Amreco) solicited Calvert Fire Insurance Company's (Calvert) participation in its reinsurance pool, composed of 99 other insurance companies which shared the profits and losses of the pool. In early 1974, Calvert agree to participate for the year 1974. In April of that year, two events of significance occurred. First, Amreco issued financial information relating to the pool's performance in 1973; and, second, a wave of tornadoes struck the Midwest, assuring that the pool would suffer losses for the year 1974. Under the terms of the participation agreement, Calvert would become liable for its share of the 1974 losses. By telegram of April 19, 1974, Calvert requested that Amreco terminate its membership in the pool, retroactive to January 1, 1974. In a follow-up letter, Calvert explained that it would never have joined the pool had it been informed, prior to signing the participation agreement, of the extent of the pool's losses in 1973.[3]

On July 7, 1974, Amreco filed a suit in state court to obtain a declaration that the participation agreement was still in full force and effect. Calvert defended at first on the ground that a declaratory action was not an appropriate remedy for breach of contract, and then on the ground that the action should be transferred from the Law Division to the Equity Division. Unsuccessful in both these arguments, Calvert sought certification of these issues for interlocutory appeal and stay of discovery pending their final resolution. Certification was denied.

On January 15, 1975, a full six months after the filing of Amreco's declaratory judgment action, Calvert first raised the affirmative defense that it was misled by Amreco during the negotiations leading to the signing of the participation agreement and, accordingly, was entitled to rescission of the agreement. In support of this new argument, it cited the state common law of fraud and also the anti-fraud provisions of state and federal securities acts.[4] Securities law was invoked on the theory that a participatory interest in a reinsurance pool constitutes a "security" which was "sold" to Calvert within the meaning of the securities acts. Calvert also filed a counterclaim for two million dollars in damages on all the same legal theories asserted in its defense,

---

2. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), discussed *infra* p. 1233, also sustained a federal court's deferral to a parallel state action, but no federal question was involved in that case and the federal plaintiff sought declaratory relief, which is in any event discretionary with the federal courts.

3. Memorandum of Law of Calvert Fire Insurance Company in Opposition to Defendant's Motion to Abate Proceedings, or in the Alternative, to Dismiss, Exhibits E and F.

4. The state securities acts on which Calvert relied were the Maryland Securities Law and the Illinois Securities Act. Calvert is a Penn-sylvania corporation with its principal office in the state of Maryland, and Amreco is an Illinois corporation with its principal office in the state of Illinois.

The federal statutes cited by Calvert were the Securities Act of 1933 and the Securities Exchange Act of 1934. The 1933 Act vests concurrent jurisdiction in the state and federal courts, while the 1934 Act grants the federal district courts exclusive jurisdiction to enforce the Act. Calvert's 1934 Act claims for rescission and damages are based on Rule 10b–5 promulgated under § 10(b) of the Act. 17 CFR § 240.10b–5.

with the conspicuous exception of the 1934 Securities Exchange Act.

On the same day it filed its state defense and counterclaim on the above fraud theories, Calvert filed a federal suit for rescission and two million dollars in damages on all the same legal theories, with the addition of the 1934 Act, which it had not pled in its state counterclaim for damages.

On May 6, 1975, Judge Hubert Will of the Northern District of Illinois, to whom the federal suit had been assigned, entered an unpublished order and memorandum opinion staying all aspects of Calvert's federal suit concurrently before the state court. The stay extended to all the theories cited by Calvert in state court, including the 1934 Act claim for rescission, since we have interpreted Section 27 of the 1934 Act[5] to allow concurrent jurisdiction in the state courts of 1934 Act defenses to a state cause of action. *Aetna State Bank v. Altheimer,* 430 F.2d 750, 754 (7th Cir. 1970);[6] *accord, Shareholders Management Co. v. Gregory,* 449 F.2d 326 (9th Cir. 1971); II Loss, Securities Regulation 977–980 (2d ed. 1961); *cf. Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 662, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) (exclusive federal jurisdiction granted under Natural Gas Act does not preclude state court adjudication of defenses based thereon); *Hampton House Management Corp. v. Saleh,* 357 F.Supp. 591, 593 (S.D.N.Y.1973) (exclusive federal jurisdiction conferred by Economic Stabilization Act does not prohibit state decision of defenses raised under the Act). The stay expressly excluded Calvert's 1934 Act claim for damages, since jurisdiction over claims for affirmative relief under the Act is exclusively vested in the federal courts and, in

any event, Calvert had not pled the 1934 Act in support of its state counterclaim for damages.

On May 9, 1975, Judge Will, who had invited the Judge in the state action to sit with him, heard oral argument on the question of whether a participatory interest in a reinsurance pool constituted a "security" under the definition of that term in the 1933 and 1934 Acts. On June 16, 1975, the state judge[7] handed down an order deciding that question in the negative. At that point, and not before, Judge Will apparently decided informally on his own motion to postpone decision on the federal security question.

Calvert applied to this court for a writ of mandamus seeking (1) a reversal of Judge Will's order of May 6, 1975 to the extent it stayed Calvert's 1934 Act claim for rescission and (2) an order compelling Judge Will to rule immediately on the 1934 Act claim for damages. We granted the writ, not finding the "exceptional circumstances" which, under *Colorado River, supra,* would allow federal court deferral to a parallel state court proceeding for reasons of "wise judicial administration." As we thought that Judge Will's decision to stay had been correct under our pre-*Colorado River* decision in *Aetna State Bank v. Altheimer, supra,* we overruled that case. *Calvert Fire Ins. Co. v. Will,* 560 F.2d 792 (7th Cir. 1977).

The Supreme Court, in a 4–4–1 opinion, reversed our mandamus order. Justice Rehnquist, speaking for four of the five justices voting for reversal, addressed only the propriety of staying the 1934 Act rescission claim, which was concurrently before the state court. He held that mandamus

---

**5.** Section 27 provides, in pertinent part:

> The district courts of the United States . . . shall have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder.
> 15 U.S.C. § 78aa.

**6.** The status of *Aetna* as the law of this Circuit is unclear as it was overruled by an even division of the eight judges of this Court in regular

active service in *Calvert Fire Ins. Co. v. Will,* 560 F.2d 792, 796 n. 5 (7th Cir. 1977), which in turn was reversed by the Supreme Court in *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). *Aetna's* position on the concurrent jurisdiction of state courts to decide 1934 Act defenses not involving a claim for affirmative relief remains good law, however.

**7.** Hon. Arthur Dunne of the Circuit Court of Cook County, Illinois.

was appropriate only where there was a "clear and indisputable" right to the writ, which he could not find here since, in his view, district judges possess a discretionary power to stay a matter concurrently before a state court. *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 662, 665, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). He did not address the issue of Judge Will's failure to rule on the 1934 Act damage claim (which was the only claim within the federal courts' exclusive jurisdiction) because he found nothing in the record to indicate that Judge Will's delay in ruling on the damage claim was due to anything more than the normal heavy workload of the federal district courts. *Id.* at 666–667, 98 S.Ct. 2552.

Justice Blackmun provided the swing vote for reversal on the limited ground that our grant of the writ of mandamus had been premature in light of the fact that *Colorado River* had not been decided at the time Judge Will made his original decision to stay, and that we should have done no more than remand to Judge Will for reconsideration of his decision in light of *Colorado River.*

On remand to this Court, we were faced with the task of interpreting the position of a majority of the Justices. We concluded that Judge Will should be afforded the opportunity of reevaluating his decision to stay in light of *Colorado River.* *Calvert Fire Insurance Co. v. Will,* 586 F.2d 12 (7th Cir. 1978).

In his subsequent decision, which is the one now under review, Judge Will made it clear that he had also deliberately stayed decision on the 1934 Act damage claim and that postponement of decision on that claim

had not been due to the normal heavy workload of the court, as Justice Rehnquist had postulated. However, he explained his stay of the damage claim by pointing out that Calvert had admitted in oral argument before the Supreme Court that it had no claim for damages against Amreco since it had paid nothing into the pool and rescission would therefore make it whole.[8] Thus dismissing Calvert's only claim to the exclusive jurisdiction of the federal courts, Judge Will concluded that continuing the stay of Calvert's concurrent claims was justified since Calvert had already obtained an adjudication of all its federal securities claims from the state court and he could only conclude that its continuing quest for a federal readjudication of the same security issue was a delaying tactic.[9] *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 459 F.Supp. 859 (N.D.Ill.1978).

Judge Will did not think that a stay postponing decision of a vexatious federal suit was inconsistent with *Colorado River* since that case recognized a discretionary power to dismiss federal question suits for reasons of wise judicial administration. Furthermore, even if the "exceptional circumstances" justifying a *Colorado River*-type dismissal were arguably not present here, there were several points distinguishing the present case from *Colorado River.* First, Judge Will had only *stayed* Calvert's federal suit whereas the federal suit in *Colorado River* had been *dismissed* outright; and, second, Calvert had failed to utilize the removal procedure created by 28 U.S.C. § 1441, although available on the basis of diversity of citizenship.[10] 459 F.Supp. at 863–864.

---

8. The Supreme Court did not mention this admission by Calvert anywhere in its opinion, although its significance was acknowledged by Calvert, which dropped its prayer for damages as a basis for exclusive federal jurisdiction under the 1934 Act in its argument before this Court.

9. As Judge Will pointed out, Calvert had a financial interest in delay, since the longer it could postpone a possible obligation to pay money into the pool, the longer it could benefit from the difference between the statutory inter-

est rate and the prevailing commercial interest rate. 459 F.Supp. at 865.

10. Calvert explained its failure to remove the state suit to federal court on the ground that it did not think of its securities law cause of action until after the 30 day period for removal specified in 28 U.S.C. § 1446(b). It thus had no reason to remove the suit prior to that time, although the jurisdictional basis for removal (diversity) had been present from the start of the suit.

Any discussion of federal court deferral to a parallel state proceeding for reasons apart from the three traditional categories of abstention [11] must begin with *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In that case, the United States brought suit in district court to adjudicate water rights claims based on federal and state law.[12] A defendant in the federal suit moved in state court to have the United States served as a defendant in a state proceeding to adjudicate these same claims.[13] The state court granted the motion, the United States having given its consent in the McCarran Amendment, 43 U.S.C. § 666, to be sued in state water rights proceedings. Several federal defendants then moved to dismiss the federal suit on the ground that all the Government's claims, including those based on federal law, could be decided in state court. The district court granted the motion, and the Supreme Court sustained the dismissal, even though it found none of the traditional grounds for abstention applicable.

■ There are, therefore, situations where a federal court may defer to a parallel state proceeding, even when the result will be to relegate decision of questions of federal law over which the district court has jurisdiction to a state forum. The reason for such deferral is to prevent duplication of judicial effort in two separate court systems and to confine the litigation to the forum able to make the most comprehensive disposition. Dismissal for reasons of "wise judicial administration," 424 U.S. at 817, 96 S.Ct. 1236, had been previously recognized by the Supreme Court in the context of federal court deferral to another *federal* proceeding involving similar issues and parties, see *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952), *Steelman v. All Continent Corp.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937), *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), and also in one case involving federal court deferral to a parallel *state* proceeding, *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), but in that case no questions of federal law were involved and the federal suit was one for declaratory judgment, which the district courts in any event have considerable discretion to dismiss, see *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 671, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) (Brennan, J., dissenting); *Kerotest Mfg. Co., supra.*

■ The Supreme Court made it clear that the circumstances justifying federal court deferral to a state proceeding are still considerably more limited than the circumstances permitting federal court deferral to another federal court. 424 U.S. at 817, 96 S.Ct. 1236. Despite this cautionary note, however, the Court did not articulate a different test to apply in the federal/state context, preferring to rely on the traditional test governing relations between two federal courts confronted with parallel suits. Under the traditional "balancing test" the district judge must make a "care-

11. Abstention is appropriate in the following situations:

  (1) " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law' ";
  (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and
  (3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings."

  *Colorado River,* 424 U.S. at 814–817, 96 S.Ct. at 1244–1245.

12. At issue were the water rights of certain federal lands. The United States asserted the water rights of national parks and forests on its own behalf and the water rights of certain Indian reservations on behalf of some Indian tribes. 424 U.S. at 805, 96 S.Ct. 1236.

13. There was no particular state proceeding under way, but the Colorado Water Right Determination and Administration Act, Colo.Rev. Stat.Ann. § 37–92–101 *et seq.* (1974), creates what amounts to a single continuous proceeding for water rights adjudication. See 424 U.S. at 819, 96 S.Ct. 1236.

fully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise . . ." 424 U.S. at 818–819, 96 S.Ct. at 1247, citing *Landis v. North American Co., supra,* (a case involving two federal courts). In making this judgment, the district judge may take into account such factors as (1) the desirability of avoiding piecemeal litigation, (2) the order in which jurisdiction was obtained by the concurrent forums, (3) the inconvenience of the federal forum, and (4) the court first assuming jurisdiction over any property which may be involved in the suit. 424 U.S. at 818, 96 S.Ct. 1236. No one factor is necessarily controlling. The district judge's exercise of discretion should be based on his weighing of a combination of factors. *Id.* The above list is not exhaustive, and the district judge should consider any special factors counselling for or against the exercise of jurisdiction in the case before him. The latter point is illustrated by the factors actually relied upon by the Court in *Colorado River.* The Court placed great emphasis on its finding, in the McCarran Amendment, of a Congressional expectation that the state courts would decide some water rights disputes involving the United States as a party.

In the present case, Judge Will would place much emphasis on his perception of the federal suit as a reactive defensive maneuver by Calvert to delay the state pro-

ceeding and postpone final resolution of its dispute with Amreco.[14] Certainly, under *Colorado River,* it was proper for Judge Will to consider the vexatious nature of the federal suit as well as any other factors bearing on the propriety of continuing the stay. Preventing a vexatious suit is similar to the interest in avoiding piecemeal litigation mentioned in *Colorado River, supra* at 818, and would clearly justify federal deferral to a parallel state proceeding unless there exist strong countervailing reasons for the federal court to decide the federal suit without further delay, such as prejudice to Calvert or compelling policy reasons to secure an immediate federal court decision on a 1934 Act issue concurrently within the jurisdiction of the state court.

In deciding the present case, it is important to bear in mind two factors persistently denied or played down by Calvert. First, this case is most definitely one involving the concurrent jurisdiction of the state and federal courts and, second, Judge Will has never purported to dismiss the federal suit. So long as Judge Will has not actually dismissed the federal suit and there remains a meaningful distinction between a stay and a dismissal, the issue before us remains confined to the narrow one of whether there are any policy considerations supporting an immediate, as opposed to eventual, ruling by Judge Will on the security question already decided by the state court.

---

14. Judge Will's characterization of the suit as vexatious is essentially a factual finding which we should accept on appeal unless contrary to the weight of the evidence. Such is not the case here. There was ample evidence to support his finding that Calvert sought to delay a final decision on its liability under the participation agreement, and also that it sought to employ the federal suit as part of its delaying strategy. While delay is a legitimate trial tactic, it is not one which the federal courts are required to go along with.

The evidence supporting Judge Will's view of the federal suit includes the following:

(1) Calvert did not assert its affirmative defense of fraud until six months after Amreco brought suit for declaratory relief in state court, employing instead a combination of technical objections to the suit and requests for stay of discovery pending interlocutory

appeal of these objections. See p. 1230 *supra* and Amreco Brief at 2.

(2) Calvert failed to utilize the removal statute, 28 U.S.C. § 1441, even though the diversity basis for removal existed at the initiation of the state suit.

(3) Calvert used the federal suit to stay discovery in the state suit. See 459 F.Supp. at 864 and n. 5.

While none of the above acts standing alone would be particularly significant, their cumulative effect is to suggest that Calvert sought to delay a final decision and use the federal courts as part of this plan.

For a proposal that the stay power be used to prevent circumvention of the removal statute, see Note, Stays of Federal Proceedings in Deference to Concurrently Pending State Court Suits, 60 Col.L.Rev. 684, 704 (1960).

The stay entered in this case is not equivalent to a dismissal because (1) Judge Will made the decision to stay the 1934 Act damage claim only after the state court had already ruled on the security question, see 459 F.Supp. at 861, so any possible res judicata effect of the state court judgment was not created by the decision to stay; (2) continuation of the stay is expressly conditioned on fairness to the parties and a prompt adjudication in state court of the remaining issues, see 459 F.Supp. at 863–864; and (3) the point in time when the district court must decide whether to dismiss the federal suit or rule on the merits of the security question has not yet been reached since Calvert's common law fraud claim has not yet been decided by the state court.[15] Calvert has not claimed any actual prejudice from Judge Will's postponement thus far, nor shown any reason why it would be prejudiced by a further postponement until such time as all proceedings in the state court have come to an end. Its only remaining argument must be that its assertion in federal court of a 1934 Act claim entitles it to an immediate federal court ruling on the security question, even though its particular 1934 Act claim (for rescission) admittedly lies within the concurrent jurisdiction of the state court and has already been decided by that court.

We are not persuaded by such an argument. In the absence of a legitimate claim to exclusive federal jurisdiction, we see no reason why a federal court should not stay its hand pending termination of a parallel state proceeding, at least where the district judge has found the federal suit to be vexatious.

The interest in having a federal court decide the 1934 Act claim here involved is attenuated since Calvert has no claim for affirmative relief as did the federal plaintiff in *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir. 1955). In *Lyons,* Judge Learned Hand held in favor of the exercise of federal jurisdiction over federal antitrust defenses concurrently before the state court, but in that case the plaintiff in the federal suit also sought treble damages—punitive and affirmative relief which arguably should be decided in federal court for the sake of uniformity and obtaining a sympathetic hearing. *Cotler v. Inter-County Orthopaedic Ass'n,* 526 F.2d 537 (3d Cir. 1975), *McGough v. First Arlington National Bank,* 519 F.2d 552 (7th Cir. 1975), and *Clark v. Watchie,* 513 F.2d 994 (9th Cir. 1975), all required federal courts to decide 1934 Act claims simultaneously pressed in parallel state suits, but those cases properly involved the exclusive jurisdiction of the federal courts since the federal suits sought affirmative relief in the form of damages.[16]

---

**15.** In our earlier opinion on the mandamus issue we concluded that the stay was "equivalent to a dismissal for purposes of this case," 560 F.2d at 796, but our assumption at that time, as well as the assumption of Justice Brennan in his dissent supporting our grant of the writ of mandamus, 437 U.S. at 668, 98 S.Ct. 2552, was that Calvert had a claim to the exclusive jurisdiction of the district court. Judge Will has since explained in his opinion now under review, and Calvert has admitted, that it has no claim for damages against Amreco, and hence no claim to the exclusive jurisdiction of the federal courts. The consequences of a stay in this case are thus altogether different than supposed in these two previous opinions.

It has been said that "[a] stay in deference to parallel proceedings will usually have the same effect as a dismissal because of the effects of res judicata." Comment, Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of *Colorado River,* 44 U.Chi.L.Rev. 641, 662 n. 143 (1977). However, this ground for equating stays and dismissals cannot be said to apply here since Judge Will only decided to postpone decision on the security question after the possibility of res judicata had already arisen due to Judge Dunne's prior ruling on that question.

Other decisions have distinguished between the two forms of disposition. *See Will v. Calvert,* 437 U.S. at 664–665, 98 S.Ct. 2552; *Calvert v. Will,* 560 F.2d at 796 n. 5 (Pell, J., statement); *Aetna State Bank v. Altheimer,* 430 F.2d 750 (7th Cir. 1970); *Weber v. Consumers Digest, Inc.,* 440 F.2d 729, 732 (7th Cir. 1971); *Shareholders Management Co. v. Gregory,* 449 F.2d 326 (9th Cir. 1971). *See generally* C. Wright, Handbook of the Law of Federal Courts 228 (3d ed. 1976).

**16.** Although the present case does not involve a claim to the exclusive jurisdiction of the federal courts, it is interesting to note that both Professor Louis Loss and the American Law Institute

Countering the weak interest in having a federal court decide a 1934 Act claim for rescission already decided by a state court in a proper exercise of its concurrent jurisdiction and the even weaker interest in obtaining such a decision prior to completion of all phases of the state suit (which is the only interest we need consider here), is the strong support in policy for furnishing district judges with a means to deter vexatious use of the federal courts. A limited power to stay a federal suit until termination of a parallel state suit represents a reasonable accommodation of the conflict between the needs of wise judicial administration and the obligation of the federal courts to exercise their jurisdiction. *See Mottolese v. Kaufman,* 176 F.2d 301 (2d Cir. 1949) (L. Hand, C. J.) (recognizing a discretionary power to stay a federal suit predicated on diversity of citizenship until termination of a prior state suit) and *P. Beiersdorf & Co. v. McGohey,* 187 F.2d 14 (2d Cir. 1951) (extending the discretionary stay to a case involving a federal question).[17]

■ Such a stay continues to be justified even after the state court has decided all the federal issues within its concurrent jurisdiction because a decision on the state law issues favorable to the federal plaintiff may obviate the need for a federal decision and, even if the federal plaintiff still desires to pursue his federal action after conclusion of the state suit, state court findings of fact on state causes of action paralleling the federal cause of action may be entitled to collateral estoppel effect in a subsequent federal suit. *See Klein v. Walston & Co., Inc.,* 432 F.2d 936 (2d Cir. 1970) (stay of federal suit asserting 1934 Act claims pending state court determination of common law claims).

■ Accordingly, Judge Will's continued stay of all proceedings in the federal suit pending termination of the state action is affirmed. After the state court decides Calvert's common law fraud claim, Judge Will will have to decide whether to dismiss the suit outright or rule on the security question. If he chooses the latter course, he will first have to ascertain the proper weight to accord the prior state court decision under the res judicata doctrine.[18]

AFFIRMED.

have recommended that § 27 of the 1934 Act be amended to conform to the concurrent jurisdiction pattern of all the other SEC acts. II Loss, Securities Regulation 998 (2d ed. 1961) and Supp. to 2d edition, vol. VI, p. 4142. There was no legislative discussion of § 27 prior to its enactment.

17. Professors David Currie and Philip Kurland have suggested that the Judicial Code be amended to provide for stays of federal suits if there is a prior state or federal suit pending. *See* Currie, The Federal Courts and the American Law Institute (pt. II), 36 U.Chi.L.Rev. 268, 335 (1969); Kurland, Toward a Cooperative Judicial Federalism: The Federal Court Abstention Doctrine, 24 F.R.D. 481 (1959).

18. The res judicata effect of a prior state court decision on a pure question of law involving interpretation of a federal statute (such as Judge Dunne's decision that a participatory interest in a reinsurance pool does not constitute a "security") is an unsettled question. *See MacGregor v. Westinghouse Elec. & Mfg. Co.,* 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380 (1947); *Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed.2d 458 (1897); Comment, Exclusive Federal Jurisdiction: The Effect of State Court Findings, 8 Stan.L.Rev. 439, 446–451 (1956); and Case Comment, 69 Harv.

L.Rev. 573 (1956) (res judicata in a subsequent federal suit). *But see Will v. Calvert, supra,* 437 U.S. at 674–676, 98 S.Ct. 2552 (Brennan, J., dissenting); *McGough v. First Arlington Nat'l Bank, supra; Cotler v. Orthopaedic Ass'n supra; Clark v. Watchie, supra; Lyons v. Westinghouse, supra* (all cases involving a claim to the exclusive jurisdiction of the federal courts); Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va.L.Rev. 1360 (1967); and Note, The Res Judicata and Collateral Estoppel Effect of Prior State Suits on Actions Under SEC Rule 10b–5, 69 Yale L.J. 606, 610 (1960) (not res judicata in a subsequent federal suit).

It appears fairly settled, however, that state court findings of *fact* are entitled to collateral estoppel effect in a subsequent federal suit, even if dispositive of the federal question. *See Becher v. Contoure Laboratories, Inc.,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929); *Lyons v. Westinghouse, supra* (Hand, J., statement); 53 Va.L.Rev. 1360, *supra* at 1382.

Mixed questions of law and fact lie somewhere in the middle. For a criticism of according such importance to characterization of an issue as factual or legal, see 8 Stan.L.Rev. 439, *supra* at 443–446.