689 F.2d 103
 VOKTAS, INC., a Greek corporation, Plaintiff-Appellee,
v.
CENTRAL SOYA COMPANY, INC., an Indiana corporation, and
Central Soya International, Inc., a Panamanian
corporation, Defendants-Appellants,
v.
SOUTHEASTERN MINERALS, INC., Third-Party Defendant.
 No. 81-2634.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 4, 1982.
Decided Sept. 1, 1982.
As Amended Sept. 20, 1982.
 
 1
 Edward L. Murphy, Jr., Fort Wayne, Ind., for defendants-appellants.
 
 
 2
 Raymond E. Vickery, Jr., Reed, Smith, Shaw & McClay, McLean, Va., for plaintiff-appellee.
 
 
 3
 Before BAUER and POSNER, Circuit Judges, and LARSON, Senior District Judge.*
 
 
 4
 LARSON, Senior District Judge.
 
 
 5
 This appeal concerns the power of a federal district court to stay proceedings during the pendency of a state court action. In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), the Supreme Court noted "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," but the Court also recognized an exception to this rule based "on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " The significance of Colorado River has been assessed in numerous opinions, including the decision of this Court in Calvert Fire Ins. Co. v. American Mut. Reinsur. Co., 600 F.2d 1228 (7th Cir. 1979) (hereinafter cited as Calvert Fire ). After consideration of the applicable case law and the circumstances of the present case, we affirm the denial of the motion for stay.
 
 
 6
 On August 13, 1979, plaintiff-appellee Voktas, Inc. (Voktas), a Greek poultry producing company, filed a products liability action in Indiana state court against defendant-appellant Central Soya Company, Inc. (Central Soya), an Indiana manufacturer of poultry feed and defendant-appellant Central Soya International, Inc. (Central Soya International), a Panamanian corporation that acts as an intermediary in sales between Central Soya and foreign buyers. Plaintiff alleged that defendants had sold two shiploads of defective poultry feed to Voktas and claimed more than 9.5 million dollars in damages. There were a number of changes of venue within the Indiana state court system, and defendants filed various motions in state court, including a motion to strike, a motion to dismiss, and various objections to plaintiff's discovery requests. On November 20, 1979, Voktas filed an almost identical suit in federal district court, the only significant difference being that the federal complaint alleged jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332 (1976). One of the advantages that the federal forum provided plaintiff was the potential for more thorough discovery, especially of an international nature, due to differences between federal and Indiana law. Voktas also maintains that the federal forum promised to allow more expeditious resolution of the dispute. On January 24, 1980, defendants moved for a stay of the federal action during the pendency of the state court suit, but on July 21, 1980, the federal magistrate denied the motion for stay.[1] Accepting defendants' argument that the decision involved "a controlling question of law as to which there is substantial ground for difference of opinion," the magistrate certified the issue for interlocutory appeal to this Court under 28 U.S.C. § 1292(b) (1976). The magistrate declined to stay proceedings during the pendency of the appeal and discovery went forward.[2] On December 19, 1980, plaintiff filed a notice of dismissal in the federal court as to Central Soya International. This was in response to defendants' argument that the presence of Central Soya International destroyed complete diversity.[3] Plaintiff stipulated in the state court that any judgment in the federal action would be binding against it as to Central Soya International in the state court action.[4] On October 1, 1981, this Court found that the magistrate had authority to certify the question for interlocutory appeal, and we granted the petition for appeal. Central Soya Co., Inc. v. Voktas, Inc., 661 F.2d 78, 81 (7th Cir. 1981).
 
 
 7
 Subsequent to our grant of the petition for appeal, the state court on December 23, 1981, stayed all proceedings before it "pending disposition of the parallel proceeding ... in the U. S. District Court." Voktas, Inc. v. Central Soya Co., Inc., No. C-80-26 (Cir.Ct. Dekalb County, Ind., Dec. 23, 1981). From the record before us, it appears that the state judge granted the motion for stay because he was concerned about the adequacy of the resources of his court to handle a suit of this size and complexity which involved a large amount of discovery in distant locations.[5] On January 4, 1982, the state judge denied defendants' motion to reconsider the stay order. Defendants initially indicated that they would appeal the order of the state trial court to the Indiana Court of Appeals, but by their Notice of Non-Appeal of State Action Stay Order (filed May 7, 1982), Central Soya and Central Soya International informed this court of their intention not to appeal the state stay order. They represented, however, that if this Court determines that the federal magistrate erred in denying defendants' motion for stay, defendants will ask the state trial court to reconsider its earlier ruling.
 
 
 8
 In its present posture, the appeal before this Court of the magistrate's refusal to stay federal proceedings during the pendency of the state litigation is close to being moot. The state court has made it clear that it will stay proceedings in its forum until a disposition of the federal suit is achieved. Under these circumstances, it is not certain that the question of whether the federal suit should be stayed has continuing vitality. Further, if we were to find that the federal magistrate abused his discretion in denying the motion for stay, the practical result might be termed "judicial paralysis"-both the federal and the state actions would be stayed and no progress toward resolution of the dispute would occur. We can do no more than speculate whether, upon a request for reconsideration, the state court would lift its order to stay the proceedings. If anything, the concerns of the state court about the size and complexity of the suit suggest that the Indiana judge would be reluctant to proceed with the litigation.
 
 
 9
 In any event, the federal magistrate did not abuse his discretion in denying the motion for stay.
 
 
 10
 The leading case in this Circuit on the standards for granting a stay during the pendency of a state court action is Calvert Fire.[6] In this case we affirmed the stay of a federal suit for rescission of a participation agreement in a reinsurance pool along with a claim for two million dollars in damages. The suit was premised upon state and federal law, including a damages provision of the Securities Exchange Act of 1934 over which the federal courts have exclusive jurisdiction. The federal action was brought subsequent to a state action in which the roles of the parties had been reversed; the federal defendant had initiated the state action to seek a declaration that the participation agreement was still in effect. Our affirmance of the federal stay came after an initial grant of stay by the federal district court, Calvert Fire Ins. Co. v. American Mut. Reinsur. Co., No. 75 C 103 (N.D.Ill. May 6, 1975); the issuance of a writ of mandamus by this Court to compel the federal district court to proceed with the litigation, Calvert Fire Ins. Co. v. Will, 560 F.2d 792 (7th Cir. 1977); reversal of the writ of mandamus by the United States Supreme Court, Will v. Calvert Fire Ins. Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978);[7] dismissal of the petition for a writ of mandamus by this Court, Calvert Fire Ins. Co. v. Will, 586 F.2d 12 (7th Cir. 1978); and an order continuing the stay by the district court, Calvert Fire Ins. Co. v. American Mut. Reinsur. Co., 459 F.Supp. 859 (N.D.Ill.1978). The facts and legal issues surrounding this case have been thoroughly stated and restated by all three levels of the federal judiciary. We will not reiterate what has been said before, except as is necessary to outline the basic significance of the previous decision.
 
 
 11
 In our ultimate disposition of Calvert Fire we stated:
 
 
 12
 Any discussion of federal court deferral to a parallel state proceeding for reasons apart from the three traditional categories of abstention must begin with Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)....
 
 
 13
 The Supreme Court made it clear that the circumstances justifying federal court deferral to a state proceeding are still considerably more limited than the circumstances permitting federal court deferral to another federal court.... Despite this cautionary note, however, the Court did not articulate a different test to apply in the federal/state context, preferring to rely on the traditional test governing relations between two federal courts confronted with parallel suits. Under the traditional "balancing test" the district judge must make a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise..." .... In making this judgment, the district judge may take into account such factors as (1) the desirability of avoiding piecemeal litigation, (2) the order in which jurisdiction was obtained by the concurrent forums, (3) the inconvenience of the federal forum, and (4) the court first assuming jurisdiction over any property which may be involved in the suit.... No one factor is necessarily controlling. The district judge's exercise of discretion should be based on his weighing of a combination of factors.... The above list is not exhaustive, and the district judge should consider any special factors counselling for or against the exercise of jurisdiction in the case before him.
 
 
 14
 600 F.2d at 1233-34 (footnotes omitted). In recognition of the open-ended nature of the factors that can be considered under Colorado River, we found that it was "proper" for the district judge to take into account "the vexatious nature of the federal suit" in his decision to grant the motion for stay. 600 F.2d at 1234.
 
 
 15
 The federal magistrate in the present case applied the correct legal standards, basing his decision to deny defendants' motion for stay on Colorado River and Calvert Fire. After stating the four Colorado River factors and the fifth Calvert Fire factor, the magistrate found:
 
 
 16
 The federal suit is not an attempt to break up larger litigation into smaller actions with resulting piecemeal litigation. The federal forum is not inconvenient. No res has been seized by the State court. The State action, although totally duplicative, could not be considered as vexacious (sic). The State action was filed approximately three (3) months before the federal case but this circumstance should not be dispositive in the absence of other factors.
 
 
 17
 Memorandum of Decision and Order at 2. In the absence of a showing that these findings are contrary to the weight of the evidence, this Court must defer to the judgment of the trial court. See Calvert Fire, 600 F.2d at 1234 n.14.
 
 
 18
 Defendants-appellants maintain, however, that the magistrate abused his discretion by limiting his consideration to the five factors in Colorado River and Calvert Fire. They emphasize the open-ended nature of the Colorado River balancing test and argue that the magistrate erred in not taking into the balance the best use of judicial resources and the burden of the federal discovery sought by plaintiff.
 
 
 19
 We are unwilling to find that the federal magistrate improperly limited the scope of his deliberation. The magistrate's entire Memorandum of Decision and Order comprised only two and a half pages, and it is understandable that a brief discussion of this kind would not be exhaustive in its discussion of all of the factors that entered into the decision. Moreover, the magistrate employed language which demonstrated his understanding of the open-ended nature of the balancing test. He recognized that he was able to consider "such factors as " those stated in Colorado River. Memorandum of Decision and Order at 2 (emphasis added). Both plaintiff and defendants provided the magistrate with memoranda on the issues presented by the motion for stay and their analysis of the factors that came into play. The magistrate did, in fact, acknowledge that a grant of the motion for stay would result in a better use of judicial resources and would eliminate what he viewed as wasteful federal discovery. Id. at 2. We shall turn next to the question of whether the magistrate was correct in his perception that Supreme Court authority requires a stronger showing for a federal court to defer to an ongoing state litigation, but for now we find that there is reason to believe that the magistrate balanced a range of factors in reaching his determination. We cannot conclude that the magistrate committed a clear abuse of discretion by failing to consider the "special factors counselling for or against the exercise of jurisdiction." Calvert Fire, 600 F.2d at 1234.
 
 
 20
 As an additional basis for reversing the magistrate, defendants-appellants maintain that the magistrate erred in his express refusal to adopt the analysis found in Burrows v. Sebastian, 448 F.Supp. 51 (N.D.Ill.1978). The plaintiff in Burrows, an Indiana state trooper, filed an action in Indiana state court against two Illinois defendants for personal injuries suffered in a motor vehicle accident. Approximately ten months later, plaintiff filed a diversity of citizenship action based on the same injuries in the United States District Court for the Northern District of Illinois. The federal complaint named the two original state defendants as well as two additional defendants whose identities were determined through state court discovery procedures. The state defendants moved for dismissal in light of the concurrent state litigation, and the federal district judge entered an order stating that "proceedings in this cause are hereby stayed pending disposition or voluntary dismissal of the state court suit." Id. at 54. In reaching this outcome, the Burrows Court distinguished Colorado River :
 
 
 21
 The present situation ... involves a "repetitive" rather than a "reactive" suit; both the state and parallel federal actions have been brought by the same plaintiffs. In such a situation, the federal court, by staying its proceedings pending the disposition or voluntary dismissal of the state court action, simply places the plaintiff in the position of having to decide in which of the two forums to pursue his claims.... Hence, such an order does not require "exceptional circumstances" in order to be warranted.
 
 
 22
 448 F.Supp. at 53. Defendants-appellants argue that the present case is precisely analogous to Burrows because it involves a motion to stay a repetitive federal court diversity action. They argue that the magistrate abused his discretion in not recognizing his authority to grant defendants' motions under these circumstances.
 
 
 23
 The magistrate was correct in his refusal to accept Burrows as controlling precedent. The magistrate stated that
 
 
 24
 (a)lthough the rationale of Burrows is reasonable and logical and would result in a considerably wiser use of judicial resources as well as the elimination of seemingly pointless, expensive and time consuming discovery procedures in the instant controversy, the "clearest of justifications" required by Colorado River is absent.
 
 
 25
 Memorandum of Decision and Order at 2. In making this determination, the magistrate correctly recognized the strict standard that Colorado River set for deferral to state court litigation. The Burrows court equated the stay of a repetitive federal action in deference to state proceedings with the stay of a federal action in the presence of a concurrently pending federal action, 448 F.Supp. at 53, but Colorado River expressly distinguished these two situations and emphasized the heightened duty of the federal courts under the former circumstances. 424 U.S. at 817, 96 S.Ct. at 1246. In the final analysis, the approach of the Burrows court must be rejected because it inadequately provides for the special obligation of the federal courts to exercise their jurisdiction.
 
 
 26
 Our decision in Calvert Fire does not compel approval of the reasoning in Burrows. We initially issued a writ of mandamus ordering the district court to proceed with the federal lawsuit because we found that the "exceptional circumstances" required by Colorado River were lacking. We found no significant distinction between the order for dismissal in Colorado River and the order for stay in the case before us. Calvert Fire Ins. Co. v. Will, 560 F.2d 792, 795-96 (7th Cir. 1977). Subsequently, after reversal by the Supreme Court and reconsideration by the district court, we affirmed the order of stay. Calvert Fire, 600 F.2d at 1236. In reaching this conclusion we credited the district court's finding that the federal suit was vexatious. Id. at 1234 & n.14. We also endorsed the district court's distinction between a stay and Colorado River -type dismissal under the circumstances of this case, noting that the factual assumption on which we had based our earlier rejection of the distinction was no longer valid. 600 F.2d at 1235 & n.15. Our decision was similar to Burrows in that we found a distinction between a stay and a dismissal, but we did not go so far as to sanction wholesale abandonment of the Colorado River "exceptional circumstances" criterion[8] or to find that Colorado River did not apply.[9]
 
 
 27
 We note in closing that we find defendants-appellants' persistent assertion that Calvert Fire supports reversal in the present case somewhat ironic. In our affirmance of the Calvert Fire stay order we emphasized the vexatious and dilatory nature of the federal suit. 600 F.2d at 1234-35. By contrast, the motion for stay of federal proceedings in the present case has had the effect of a stalling tactic.
 
 
 28
 The order of the magistrate is affirmed and the case is remanded for further proceedings.
 
 
 
 *
 The Honorable Earl R. Larson, Senior Judge of the United States District Court for the District of Minnesota, is sitting by designation
 
 
 [1]
 Under the authority of 28 U.S.C. § 636(c)(1) (1976), the parties consented to have the proceedings in the federal action conducted by a federal magistrate
 
 
 [2]
 The federal district court record presented to this Court shows that a significant amount of discovery has taken place during the pendency of this appeal. At oral argument on May 4, 1982, counsel for Voktas informed this Court that an extensive schedule of additional discovery, both domestic and international, had been established for May, June, and July of 1982. The parties were to report back to the magistrate by July 23, 1982, to discuss the setting of a trial date. Defendants-appellants represent that discovery proceeded concurrently in the state court up until Voktas filed a motion to stay the state proceedings on October 16, 1981
 
 
 [3]
 Voktas still, however, disputes that inclusion of Central Soya International destroyed federal jurisdiction
 
 
 [4]
 On March 18, 1981, Southeastern Minerals, Inc., a third-party defendant in the state action, was added as a third-party defendant in the federal suit
 
 
 [5]
 In light of the state court's stay order, Voktas filed a motion to dismiss the interlocutory appeal in this Court on January 4, 1982. Defendants-appellants responded on January 16, 1982, with a motion to strike Voktas' motion for dismissal. On March 8, 1982, the Court denied the motion to dismiss and granted the motion to strike. We noted that the case had been fully briefed and would be set for oral argument as soon as possible
 
 
 [6]
 This Court has recently considered whether a district court is ever required to stay its proceedings pending the resolution of identical proceedings in a state court. Microsoftware Computer Systems, Inc. v. Ontel, 686 F.2d 531 (7th Cir. 1982). We concluded that, under the circumstances in that case, the district court should have stayed the federal action. We based this conclusion on several significant factors: (1) the case raised no peculiarly "federal" interest militating in favor of a federal forum; (2) the state court action was filed first; (3) the New York state court expressed no concern as to whether it could fully and fairly resolve the parties' dispute; and (4) the resources of both the courts and the parties would be wasted by litigating the same issues regarding the same contract in two forums at once. In contrast, in this case, the state court has already stayed all proceedings pending disposition of the parallel proceeding in federal court and the state judge had indicated that he fears that his court would be unable to adequately handle such a complex suit involving a large amount of discovery in distant locations. Because of these factual differences, Ontel has no application here
 
 
 [7]
 The teachings of this case are, at best, difficult to discern because there was no majority opinion. Justice Rehnquist joined by Justices Stewart, White, and Stevens found that our issuance of a writ of mandamus in Calvert Fire Ins. Co. v. Will, 560 F.2d 792 (7th Cir. 1977), should be reversed because the grant of a stay in the face of concurrent state proceedings is "largely committed to the discretion of the district court." 437 U.S. at 664, 98 S.Ct. at 2558. Justice Brennan, along with Chief Justice Burger and Justices Marshall and Powell, found that our judgment should be affirmed because the "exceptional circumstances" required by Colorado River for a stay were not present. 437 U.S. at 673-74, 98 S.Ct. at 2562-2563. Justice Blackmun concurred in the judgment of reversal, but he did not concur in the reasoning of Justice Rehnquist. Justice Blackmun believed that rather than granting a writ of mandamus, this Court should have merely remanded for reconsideration in light of Colorado River, a case which had been decided subsequent to the district court's initial order to stay the proceedings. Given the 4-4-1 division of the Court, we concluded in Calvert Fire Ins. Co. v. Will, 586 F.2d 12, 14 (7th Cir. 1978), that the import of the Supreme Court's decision was along the lines suggested by Justice Blackmun. We thus determined that the district court should consider the effect of Colorado River on the motion for stay
 Commentators have agreed that the significance of the Supreme Court's disposition of Will v. Calvert Fire Ins. Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), is far from clear. See, e.g., 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4247, at 79 (Supp.1981). Nonetheless, Wright, Miller, and Cooper conclude in light of Justice Blackmun's concurring opinion and the dissent in which Justice Brennan was joined by three other members of the Court that "the Colorado River case continues to be authoritative on the circumstances in which a federal court may stay an action pending outcome of a state proceeding." Id. at 84.
 
 
 [8]
 In opposition to this view, defendants-appellants point to the following language from Calvert Fire :
 Judge Will did not think that a stay postponing decision of a vexatious federal suit was inconsistent with Colorado River since that case recognized a discretionary power to dismiss federal question suits for reasons of wise judicial administration. Furthermore, even if the "exceptional circumstances" justifying a Colorado River-type dismissal were arguably not present here, there were several points distinguishing the present case from Colorado River. First, Judge Will had only stayed Calvert's federal suit whereas the federal suit in Colorado River had been dismissed outright; and, second, Calvert had failed to utilize the removal procedure created by 28 U.S.C. § 1441, although available on the basis of diversity of citizenship.
 600 F.2d at 1232 (emphasis added). It is a mistake to say that in this passage we endorsed an approach that would allow a court to avoid the "exceptional circumstances" requirement. It is apparent that this paragraph merely attempts to summarize the analysis of Judge Will. Moreover, review of the district court opinion reveals that not even Judge Will explicitly said that the "exceptional circumstances" requirement was inapplicable. See Calvert Fire Ins. Co. v. American Mut. Reinsur. Co., 459 F.Supp. 859 (E.D.Ill.1978). The approach to Colorado River found in Calvert Fire is clearly different from that found in Burrows.
 
 
 [9]
 It is significant that Burrows has only been followed in one reported case. See Ystueta v. Parris, 486 F.Supp. 127, 129 (N.D.Ga.1980)