854 F.2d 210
 57 USLW 2103, Fed. Sec. L. Rep. P 93,962
 Roger E. MEDEMA, Plaintiff-Appellant,
v.
MEDEMA BUILDERS, INC., Service Investment Corp. of America,
Land of Lincoln Savings and Loan Association, Thomas A.
Kinst, Frank J. Kinst, Ralph C. Gibson, Robert J. Hajek,
John J. Lachajewski, Warren H. Muchow, Andrew B. Neely, John
A. Storcel, and Gordon L. Teach, Defendants-Appellees.
 No. 87-3082.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 17, 1988.
Decided Aug. 2, 1988.
 
 Howard A. Davis, Shefsky Saitlin & Froelich Ltd., Chicago, Ill., for plaintiff-appellant.
 Neil H. Cohen, Lord Bissel & Brook, Chicago, Ill., for defendants-appellees.
 Before CUDAHY, FLAUM and RIPPLE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The district court stayed this action in deference to ongoing state court proceedings, under the doctrine of Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Plaintiff appeals, arguing that the district court abused its discretion in granting a stay of this case involving claims over which Congress has mandated exclusive federal jurisdiction. We reverse and remand for further proceedings.
 
 I.
 
 2
 In 1983, plaintiff Roger Medema sold half the shares of his wholly-owned corporation, defendant Medema Builders, Inc. ("MBI"), to another defendant, Service Investment Corporation of America ("SICA"). SICA is a wholly owned subsidiary of defendant Land of Lincoln Savings and Loan Association ("Lincoln"). At bottom, the deal was a financing transaction with SICA making a $300,000 capital contribution to MBI to bail the company out of Chapter 11 reorganization.
 
 
 3
 In conjunction with the stock sale, Medema placed his remaining shares in a voting trust for SICA's benefit, giving SICA effective control of MBI. In addition, Medema extended MBI an option to redeem all of his remaining shares if he ceased to be an MBI employee before December 31, 1986. On October 31, 1986, MBI's board fired Medema. A few days later, it exercised its option on his remaining shares. Medema refused to deliver the shares.
 
 
 4
 On April 10, 1987, MBI and SICA sued Medema and REM Realty ("REM"), his new wholly-owned company, in Illinois state court. The complaint in that case alleges various contract breaches and interference with prospective economic advantage. SICA and MBI seek compensatory and punitive damages and a declaratory judgment that MBI owns the disputed stock.
 
 
 5
 On July 21, 1987, Medema and REM filed their joint answer and defense in the state action. That same day, Medema filed this action in federal district court against MBI and SICA, as well as Lincoln and nine of its directors. Four of the federal complaint's counts allege common law violations, including fraud, breach of employment contract, and breach of fiduciary duties. Jurisdiction over those counts is based on diversity of citizenship. Count II, however, raises a federal question, alleging violations of section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. Sec. 78j(b) (1982), and Rule 10b-5, 17 C.F.R. Sec. 240.105(5) (1988).
 
 
 6
 The answer in the state case echoes the allegations made in the federal complaint, including references to Lincoln's alleged misconduct even though Lincoln is not a party to the state action. The answer includes, as a defense, the state plaintiffs' alleged 1934 Act violations. Medema did not file a counterclaim, however; indeed, he could not do so in the case of the 1934 Act claims. Although those violations can be raised defensively in state court, Congress has established exclusive federal jurisdiction over affirmative 1934 Act claims. 15 U.S.C. Sec. 78aa (1982); see also Andrea Theatres, Inc. v. Theatre Confections, Inc., 787 F.2d 59, 63 (2d Cir.1986).
 
 
 7
 Defendants moved to stay the federal proceedings in light of the concurrent state-court case. The district court granted the stay. It first held that while the presence of an exclusively federal claim cuts strongly against a stay, that factor is not determinative. Medema v. Medema Builders, Inc., No. 87 C 6445, mem. op. at 8 (Nov. 17, 1987). The court then applied a twelve-factor balancing test, gleaned from Colorado River and its progeny. Id. at 9-11. It found that deference to the state-court proceedings was appropriate, given the predominance of state law issues, the probability that resolution of the state case would determine all of the substantive factual issues (if not conclusively resolving the 1934 Act claim), and that the federal suit might be vexatious (an assertion made with little analysis). The court acknowledged the strong federal interest in a federal forum for 1934 Act suits, as well as the fact that the state case had not progressed very far at that time. Still, it felt the balance tipped in favor of deference.
 
 II.
 
 8
 The Colorado River determination is left to the discretion of the district court, and we will therefore reverse only if the judge exceeded the bounds of that discretion. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983); Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir.1985). We must decide whether Colorado River deference is ever appropriate where the federal action involves claims over which the federal courts have exclusive jurisdiction. We hold that, except perhaps in rare circumstances not present here, it is not.
 
 
 9
 Colorado River created an extraordinary exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." 424 U.S. at 817, 96 S.Ct. at 1246. The doctrine allows federal courts to stay or dismiss actions in deference to parallel and ongoing state proceedings in circumstances where abstention doctrines do not apply.[1] The Colorado River Court was driven by concerns of "wise judicial administration." Id. at 818, 96 S.Ct. at 1246. It stated firmly, however, that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Id.
 
 
 10
 The Court's reluctance to create an expansive exception to jurisdiction is understandable. While such an exception is necessary in a few instances to ensure judicial economy and deter abusive "reactive" litigation, a tension exists between this judge-made doctrine and the explicit statutes conferring federal jurisdiction. Congress has made a considered judgment that federal jurisdiction is appropriate in certain classes of cases. Where the statutory prerequisites are met, courts should be extremely wary about refusing to hear a case based on sometimes inpalpable notions of efficiency.
 
 
 11
 In its effort to craft a narrow exception, the Colorado River Court set out a two-pronged test. The threshold inquiry is whether the cases are "parallel." See Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1287 (7th Cir.1988). Cases are parallel if " 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.' " Id. at 1288 (quoting Calvert Fire Ins. Co. v. American Mut. Re-insurance Co., 600 F.2d 1228, 1229 n. 1 (7th Cir.1979) ("Calvert IV ")). The district court here neglected to undertake that initial analysis, but its discussion evinces a clear opinion that the cases are indeed parallel.
 
 
 12
 The second part of the Colorado River analysis is a multi-factor balancing test. See Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246; see also Interstate Material, 847 F.2d at 1288. This court has noted ten factors that are relevant to the inquiry. See Lumen Construction, 780 F.2d at 694 (listing factors). "No one factor is necessarily determinative." Colorado River, 424 U.S. at 818, 96 S.Ct. at 1237. The balance is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937. The district court in this case applied the balancing analysis and issued the stay. In so doing, the court stated its belief that the presence of a claim over which the federal courts have exclusive jurisdiction is an important consideration, but is not in itself determinative.
 
 
 13
 The district court took Colorado River at its word. The Supreme Court said no single factor was determinative; so the court below refused to give conclusive weight to the presence of the 1934 Act claims. That refusal was erroneous. We agree with every court of appeals to decide this question that "the district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the wise judicial administration exception." Silberkleit v. Kantrowitz, 713 F.2d 433, 436 (9th Cir.1983); see also General Motors Corp. v. California State Bd. of Equalization, 815 F.2d 1305, 1309 (9th Cir.1987) (Kennedy, J.), cert. denied, --- U.S. ----, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988); Andrea Theatres, 787 F.2d at 62; Comment, Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River, 44 U.Chi.L.Rev. 641, 678 & n. 7 (1977).
 
 
 14
 The Second Circuit's opinion in Andrea Theatres is especially persuasive. That court, after noting that Congress established exclusive federal jurisdiction over the case's Clayton Act claims, explained why deference is inappropriate:
 
 
 15
 [A]bstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary forum for handling such claims. The grant of such jurisdiction could be severely hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings.
 
 
 16
 787 F.2d at 63. Congress grants exclusive federal jurisdiction in order to cultivate uniformity and expertise, and sometimes to ensure the use of more liberal federal procedural protections. See Will v. Calvert Fire Insurance Co., 437 U.S. 655, 670, 675, 98 S.Ct. 2552, 2561, 2564, 57 L.Ed.2d 504 (1978) ("Calvert III ") (Brennan, J., dissenting). All three purposes are thwarted by deference to concurrent state proceedings.
 
 
 17
 Justice Brennan's dissent in Calvert III highlights the difficulty. In Calvert Fire Insurance Co. v. Will, 560 F.2d 792 (7th Cir.1977) ("Calvert II "), rev'd, Calvert III, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504, this court issued a writ of mandamus directing Judge Will to dissolve a Colorado River-type stay of a case that included 1934 Act claims. We held that the presence of exclusive federal jurisdiction and the strong federal interest in securities regulation were "compelling factors" weighing against a stay. Id. 560 F.2d at 796. The Calvert III Court reversed, holding that the extraordinary mandamus remedy was not appropriate in that case. Calvert III, 437 U.S. at 667, 98 S.Ct. at 2559. The majority did not reach the propriety of the initial stay. Because they felt mandamus was a proper remedy under the circumstances, the four dissenting Justices discussed the exclusive jurisdiction question. Id. at 674-76, 98 S.Ct. at 2563-64 (Brennan, J., dissenting).
 
 
 18
 First, Justice Brennan noted that "the preclusive effect of a state-court determination of a claim within the exclusive jurisdiction of the federal courts is an unresolved and difficult issue." Id. at 674, 98 S.Ct. at 2563; see also id. at 668, 98 S.Ct. at 2560 (Burger, C.J., dissenting); Andrea Theatres, 787 F.2d at 63; Calvert IV, 600 F.2d at 1236 n. 18; Comment, supra p. 213, at 678 n. 217. He then pointed out that, no matter what the res judicata effect, a stay is inappropriate in these circumstances. 437 U.S. at 675-76, 98 S.Ct. at 2563-64. Where Congress grants exclusive federal jurisdiction, that policy is "the precise opposite" of the efficiency concerns underlying Colorado River. Id. at 673, 98 S.Ct. at 2562. If the state court judgment is accorded res judicata effect, "the exclusive jurisdiction given the federal courts over 1934 Act claims would be effectively thwarted." Id. at 675-76, 98 S.Ct. at 2563-64.[2] On the other hand, if the state court decision is not given preclusive effect, the purpose of Colorado River--the avoidance of piecemeal litigation--is not furthered by a stay. Id. at 676, 98 S.Ct. at 2564. Therefore, a stay is not appropriate where some claims involve exclusive federal jurisdiction.
 
 
 19
 Calvert III 's discussion of this issue was only joined by four Justices; the majority simply did not reach the question. In other cases, however, the Supreme Court has hinted that it would adopt the reading of Colorado River deference followed by the Calvert III dissenters and the courts of appeals. In Arizona v. San Carlos Apache Tribe, 463 U.S. 545, 559-60, 103 S.Ct. 3201, 3209-10, 77 L.Ed.2d 837 (1983), the Court stated that "a dismissal or stay of the federal suits would have been improper if there was no jurisdiction in the concurrent state actions to adjudicate the claims at issue in the federal suits." Other cases contain similar, if less specific, support for our approach. See Moses H. Cone, 460 U.S. at 26, 103 S.Ct. at 942; Colorado River, 424 U.S. at 809, 96 S.Ct. at 1242; see also San Carlos, 463 U.S. at 570 & n. 20, 103 S.Ct. at 3215 & n. 20. Defendants argue that the San Carlos Court's statement is inapplicable in cases like this where the federal argument can be raised as a defense in state court. That position has been firmly rejected by the Second Circuit. Andrea Theatres, 787 F.2d at 63. It makes little sense, given that in both instances the problems recognized in Calvert III--either thwarting congressional intent or not avoiding piecemeal litigation--are equally present.
 
 
 20
 Likewise, defendants' reliance on Kruse v. Snowshoe Co., 715 F.2d 120 (4th Cir.1983), cert. denied, 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984), is misplaced. In that case, the court affirmed a district court's refusal to abstain where exclusively federal antitrust claims were present. Id. at 124. The Kruse court was silent on whether the presence of exclusively federal claims could be determinative; instead, the court held that their presence was at least an important factor and that the district court clearly did not abuse its discretion in denying the stay. The court was apparently not presented with the argument that presence of the antitrust claims alone precluded a Colorado River stay. Inexplicably, the defendants and the district court in this case construe that silence as a rejection of the position taken by other courts. We cannot read Kruse so uncharitably. It is not facially inconsistent with San Carlos and the cases from other circuits. In any event, it offers scant support for defendants' position.
 
 
 21
 In sum, two overarching reasons lead us to hold that Colorado River does not apply where Congress has determined that exclusive federal jurisdiction is desirable. First, the clear congressional intent in such cases is to sacrifice a modicum of efficiency in order to further goals of expertise, uniformity and fairness. Second, if preclusive effect is not given to state law determinations of exclusively federal claims--a question that is still open--a stay does not advance Colorado River 's purpose of avoiding piecemeal litigation. Given these twin concerns, deference is not appropriate.
 
 
 22
 That said, we do not mean to create a monolithic rule subject to no exceptions. In Calvert IV, after remand by the Supreme Court, we held that a stay was permissible on the unique facts of that case despite the presence of a 1934 Act claim. The plaintiff had admitted in oral argument before the Supreme Court that its 1934 Act claim was frivolous. See Calvert IV, 600 F.2d at 1223. Obviously, where the exclusively federal claim is frivolous, a stay is within the court's discretion. Defendants argue that that is the case here. That argument is best made in the first instance to the district court and defendants are free to do so on remand. They also may, of course, argue that a stay of the plaintiff's claims for which jurisdiction is not exclusive is still justified. Cf. Andrea Theatres, 787 F.2d at 64.
 
 III.
 
 23
 Colorado River, intended by the Court to be a shallow stream, threatens to overflow its banks due to the efforts of district court judges to control burgeoning dockets. We therefore adopt one small clear rule as a needed passage through the rapids of multi-variate balancing and totality-of-the-circumstances consideration. In one class of cases, those where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the Colorado River stay is not appropriate. We therefore reverse and remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 The parties and the district court in this case committed the common error of referring to "Colorado River abstention." While that phrase is often used by lower courts, the Supreme Court distinguishes between Colorado River deference and traditional abstention doctrines. See Colorado River, 424 U.S. at 817-18, 96 S.Ct. at 1246-47. We abide by that distinction here, while making no claim that we understand it
 
 
 [2]
 This fact leads us to reject defendants' argument that the substance of federal exclusivity may be retained here by allowing the facts to be found by the state court, with the federal courts merely applying federal law to those facts. Whether or not a court may do this, it clearly should not be encouraged in the Colorado River context, where strong congressional intent is not counterbalanced by final state-court factual findings. In other words, this situation differs substantially from the case in which factual findings are made by a state court prior to institution of federal proceedings. Here defendants ask us to hold off federal proceedings so that future state court factual findings will have preclusive effect. This is an ingenious contention but a wholly novel one, which gives only the most perfunctory deference to Congress's intent in committing the 1934 Act claim to exclusive federal jurisdiction. We cannot accept it