**JOHNSON CONTROLS, INCORPORATED, Plaintiff,**

**v.**

**AMERICAN MOTORISTS INSURANCE COMPANY, an insurance corporation, Stonewall Surplus Lines Insurance Company, an insurance corporation, Republic Insurance Company, and Constitution State Insurance Company, an insurance corporation, Defendants.**

No. 89–C–405.

United States District Court,
E.D. Wisconsin.

Aug. 22, 1989.

Frank W. Doster, Hodan & Doster, Milwaukee, Wis., and Louis A. Lehr, Jr., Arnstein & Lehr, Chicago, Ill., for plaintiff.

Jeffrey A. Schmeckpeper, Kasdorf, Lewis & Swietlik, Frank L. Steeves and Deborah F. Hamilton, Riordan, Crivello, Carlson & Mentkowski, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

This diversity case is before the Court on the defendants' motion to stay the Wisconsin federal declaratory judgment action.

### I. BACKGROUND

In June of 1986, a San Diego California resident named Gary Jones lost an eye and suffered other injuries when a Sears "Die–Hard" battery exploded. In January of 1989, a San Diego County jury returned a verdict in favor of Mr. Jones for $3.275 million in compensatory damages and for $6.5 million in punitive damages against Johnson Controls ("Johnson"), which had manufactured the battery. On January 21, 1989, judgment was entered for a total verdict of $9.775 million.

On March 17, 1989, Johnson's excess insurance carriers—Stonewall Surplus Lines Insurance Company, Republic Insurance Company, and Constitution State Insurance Company (the "moving defendants" or "excess insurers")—filed a complaint for declaratory relief in the Superior Court of California, County of San Diego, asking for a declaration under California's insurance code that they as excess insurers were not liable for any part of the $6.5 million punitive damages assessed against Johnson. The excess insurers named as defendants Johnson Controls, Gary and Mona Jones, and "Does 1–50."

On April 10, 1989, Johnson Controls filed a diversity action in this Court for declaratory relief under 28 U.S.C. § 2201, seeking a declaration of coverage under insurance policies issued by the moving defendants and American Motorists Insurance Company ("American Motorists") with respect to the $6.5 million punitive damage verdict rendered against Johnson in the Jones case. American Motorists provides first layer coverage to Johnson and insures a portion of the punitive award. The other defendants provide excess coverage beyond the American Motorists policy. Johnson was not served in the California action until April 19, 1989, after all the defendants were served with the summons and complaint in this Wisconsin declaratory action.

American Motorists, which because it provides first-layer coverage to Johnson could be liable for a portion of the punitive damages award, and which was not a named defendant in the original complaint for declaratory relief in California, filed an answer in the California declaratory judgment action on June 2, 1989, as one of the "Does."

To complicate matters further, American Motorists has alerted the Court by "Supplemental Affidavit" that Gary and Mona Jones have filed a cross-complaint for compensatory and punitive damages against Johnson and American Motorists in the California declaratory action. Johnson has moved to strike the Supplemental Affidavit, and in the alternative, opposes the Supplemental Affidavit with a memorandum of its own and a copy of a memorandum filed by Gary and Mona Jones in response to Johnson's motion in the California declaratory action to dismiss, or in the alternative,

to stay said action. Johnson's memorandum sets forth its reasons why the cross complaint is unrelated to the coverage dispute, and how, under the California Code of Civil Procedure, the cross-complaint is improperly appended to the California declaratory action. The Jones memorandum sets out the differences between the cross-complaint and the California declaratory action, and why, if the California court grants the excess insurers motion to dismiss or stay, the state court should order a separate trial on the cross-complaint.

## II. PRELIMINARY ISSUES—PLAINTIFF'S MOTION TO FILE SUR–REPLY BRIEF AND PLAINTIFF'S MOTION TO STRIKE

In a complex action such as this, any supplemental information helps this Court reach a decision. Especially helpful is any information that keeps this Court aware of the posture of the California declaratory action. Thus, this Court GRANTS plaintiff's motion to file a sur-reply brief, and, to keep matters fair, DENIES plaintiff's motion to strike the supplemental affidavit of American Motorists.

## III. PARTIES' ARGUMENTS

The excess insurers argue first that a stay of this Wisconsin declaratory action: (1) is necessary to avoid a violation of the Full Faith and Credit Clause of the U.S. Constitution; (2) is mandated by the doctrine of judicial comity; and (3) is warranted to protect them from "vexatious and harassing litigation." Johnson responds that the full faith and credit, comity, and harassment arguments are inapplicable, steering the debate to the propriety of this Court deferring to the California state court declaratory action under *Colorado River Conservation District v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976),[1] especially as the deference doctrine was applied in *Coatings, Inc. v. National Cold Drawn, Inc.*, 611 F.Supp. 958 (E.D. Wis.1985), in which a motion to stay was

denied because the relevant *Colorado River* factors had not been met. The excess insurers reply that *Ohio Casualty Co. v. Jackson County Bank*, 562 F.Supp. 1165 (W.D.Wis.1983), actually controls. In *Ohio Casualty*, the court justified its decision to decline to exercise jurisdiction on the basis of the discretionary nature of relief for declaratory judgment actions and considerations of wise judicial administration. American Motorists joins with the excess insurers seeking a stay, analogizing this case to *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531 (7th Cir.1982), *overruled on other grounds, Gulf Stream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), in which the Seventh Circuit ordered the federal proceeding stayed because there was no peculiarly "federal" interest in the action, because the state court suit was filed first and there was no indication that the state court could not fully and fairly resolve the dispute, and because it would be "a grand waste of efforts" by the courts and the parties to litigate the same issues in two forums at the same time. *Id.* at 538.

## IV. THRESHOLD QUESTION: APPLICABILITY OF BRILLHART

Prior to its decision in *Colorado River*, the United States Supreme Court recognized the power of a federal court to dismiss or stay proceedings in deference to a pending state court action in several limited situations. When federal jurisdiction is predicated on the Declaratory Judgments Act, stays in deference to state court proceedings have been approved on the ground that the federal court's assumption of jurisdiction to entertain such cases is discretionary.

Under this analysis, it is appropriate for a district court to exercise its discretion and stay an action when faced with a contemporaneous state court action if the fed-

---

**1.** This Court will abide by the semantic distinction between describing this doctrine as *Colorado River* "deference" and lumping it in with the traditional abstention doctrines. *See Medema v.*

*Medema Builders, Inc.*, 854 F.2d 210, 212 (7th Cir.1988); M. Redish, Federal Jurisdiction: Towards an Allocation of Judicial Power 249–50 (1980).

eral court action is one for declaratory judgment, federal court jurisdiction is based on diversity rather than a federal question, and all matters in controversy could be fully adjudicated in the state court proceeding. *Ohio Casualty,* 562 F.Supp. at 1167–70 (citing *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494–95, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942)).

The excess insurers have asserted that *Ohio Casualty* controls this case. This Court concludes that *Ohio Casualty,* as well as *National Fire Ins. Co. v. Milwaukee Metropolitan Sewerage Dist.,* 680 F.Supp. 1291 (E.D.Wis.1988) (declaratory judgment action in insurance matter dismissed due to pendency of similar matter in state court; state court action filed six weeks before declaratory judgment action, and declaratory judgment action would not result in more economical disposition of entire controversy), are legally indistinguishable from this case. This Court will examine, however, the current applicability of the *Brillhart* decision after the *Colorado River* opinion to determine whether a *Colorado River* analysis need be undertaken, or whether the fact that this case appears to meet the *Brillhart* criteria is dispositive.

Judge Reynolds concluded in *National Fire v. MMSD* that "[t]he Seventh Circuit recently reaffirmed its adherence to *Brillhart* and held that it is well settled that federal declaratory judgment jurisdiction is discretionary and, where a pending action will resolve all issues before the court, a duplicitous declaratory judgment action serves no useful purpose and is properly dismissed. *Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 748–50 (7th Cir.1987)." 680 F.Supp. at 1292. Judge Shabaz in *Ohio Casualty* concluded that *Brillhart* controlled, and proceeded through a four-step analysis as to the considerations of the Declaratory Judgments Act. He then analyzed the case under the *Colorado River* factors as an alternative justification for dismissal of the action.

The first issue before this Court as to the appropriate evaluation is determining the extent that *Brillhart* is good law after *Colorado River.* The opinions of the United States Supreme Court in *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), suggest that in suits for declaratory relief under diversity jurisdiction, the decision whether to stay "is largely committed to the discretion of the district court." *Will,* 437 U.S. at 664, 98 S.Ct. at 2558 (plurality opinion). The reasons for this are elaborated upon by Justice Brennan in dissent:

> As is readily apparent, crucial to this Court's approval of the District Court's dismissal of the suit in *Brillhart* were two factors absent here. First, because the federal suit was founded on diversity, state rather than federal law would govern the outcome of the federal suit. Second, and more significantly, the federal suit was for a declaratory judgment. Under the terms of the provision empowering federal courts to entertain declaratory judgment suits, 28 U.S.C. § 2201, the assumption of jurisdiction over such suits is discretionary.... It was primarily because federal jurisdiction over declaratory judgment suits is discretionary that *Brillhart* found the District Court's deference to state-court proceedings permissible.

*Will,* 437 U.S. at 671–72, 98 S.Ct. at 2561–62 (dissenting opinion).

Justice Rehnquist's plurality opinion for four justices stated that stays are solely a matter of discretion, even in federal question litigation. *Id.* Justice Blackmun, concurring in the judgment, *id.* at 667, 98 S.Ct. at 2559, and Justice Brennan, dissenting with three other justices, *id.* at 668–73, 98 S.Ct. at 2560–63, disagreed with Justice Rehnquist's reading of *Colorado River* as to federal question cases, but both justices conceded that Justice Rehnquist's permissive standard was correct under *Brillhart* in the diversity-declaratory judgment context. The Seventh Circuit adopted this reading of the *Will* opinions on remand. *See Calvert Fire Ins. Co. v. Will,* 586 F.2d 12, 13–14 (7th Cir.1978); *see also Tempco Elec. Heater Corp. v. Omega Engineering,* 819 F.2d 746 (7th Cir.1987) (court grants stay in a declaratory judgment-diversity

context). Therefore, the unanimous interpretation of the Supreme Court in *Will* of the applicability of *Brillhart* after *Colorado River,* as it has been interpreted by the Seventh Circuit, is that the sweeping language of *Brillhart* still controls in the diversity-declaratory judgment context.

This language of *Brillhart* speaks volumes as to the situation before this Court:

> Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.
>
> Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.
>
> *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1175–76.

Thus, as Judge Shabaz did in *Ohio Casualty,* this Court will evaluate the criteria of whether a declaratory judgment should be granted in light of the parallel state declaratory action.

### A. *Parties*

■ This Court concludes that the claims of all parties may satisfactorily be adjudicated in the state proceedings. Since American Motorists has joined the California declaratory action as one the "Doe" defendants, the parties in the two actions are similar; the only difference is that the Joneses are defendants in the California declaratory action, while they are absent from the Wisconsin declaratory action. Except for the Jones cross-complaint for tortious damages, the nature of which by the Jones's admission is "wholly separate and distinct from the issues raised by the declaratory relief action" and on which the Joneses seek a separate trial in the alternative, the parties in and nature of the two declaratory actions are synonymous.

### B. *Issues*

All issues raised in this federal declaratory action may be resolved in the parallel state declaratory action. Although this Court sees no danger if this action were to progress of resolving only particular issues without settling the entire controversy, *Sears, Roebuck & Co. v. American Mutual Liability Ins. Co.,* 372 F.2d 435, 438 (7th Cir.1967), this Court does not find any issues in this federal action that cannot also be resolved in the California declaratory suit.

### C. *Plaintiff's Need for Declaratory Relief*

■ This Court should also consider the plaintiff's need for declaratory relief. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1218 (7th Cir.1980). Where another available remedy would be more effective or appropriate, the Court may decline to exercise jurisdiction under 28 U.S.C. § 2201, *City of Highland Park v. Train,* 519 F.2d 681, 693 (7th Cir.1975), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976). Judge Shabaz's conclusion of a more subtle rationale for Ohio Casualty's request for declaratory relief, *Ohio Casualty,* 562 F.Supp. at 1169, is applicable in this case to Johnson. Although it is an issue as to the merits that will not be addressed here, Wisconsin and California state law differs regarding the insurability of punitive damages in a possibly dispositive way. Whether the suit commences in California state court as a state declaratory action, or in Wisconsin federal court as a diversity action for a declaratory judgment under 28 U.S.C. § 2201, state law will govern. Thus, as in *Ohio Casualty,* a fear of local prejudice on the choice of law

question in the state court action could have motivated Johnson to file this action, and thus to seek jurisdiction in this Court under 28 U.S.C. § 2201. As in *Ohio Casualty*, "Such a notion must be rejected." 562 F.Supp. at 1169. The court in *Ohio Casualty* cited the relevant case law as to why the Declaratory Judgments Act does not allow a party to obtain a federal tribunal in diversity cases where one is not available through removal. 562 F.Supp. at 1169–70. Such is the case here, as Johnson has tried to and been unable to remove this case to federal court in California due to the presence of the Joneses as codefendants in the state declaratory action. This Court concludes, as did the court in *Ohio Casualty*, that plaintiff has failed to show any need for declaratory relief or that its rights and obligations could not be determined in the usual manner in the state court proceeding.

### D. *The Public Interest*

The Court is also to consider the public's "interests in judicial expediency and in avoiding unnecessary federal court decisions." *International Harvester Co. v. Deere & Co.*, 623 F.2d at 1218. Also as in *Ohio Casualty*, there seems little advantage to the public in exercising federal jurisdiction in this case where the whole controversy may be heard in contemporaneous state court proceedings under state law. This evaluation of this case under the considerations of the Declaratory Judgments Act, as utilized in *Ohio Casualty*, dictates that it is sound for this Court to stay its exercise of jurisdiction in favor of the parallel state proceeding.

As an alternative, this Court will also undertake an analysis under *Colorado River* to determine the propriety of a stay of this federal declaratory action.[2]

### V. COLORADO RIVER *ANALYSIS*

"The 'exceptional-circumstances test' established by the Supreme Court in *Colorado River* ... permits a district court to

dismiss or stay an action when there is an ongoing parallel action in state court." *La Duke v. Burlington Northern RR Co.*, 879 F.2d 1556, 1558 (7th Cir.1989). "*Colorado River* created an extraordinary exception to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 212 (7th Cir. 1988) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246). Because an action is pending in state court does not bar parallel federal proceedings. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1307 (7th Cir.1988); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982). The Seventh Circuit Court of Appeals has stressed time and again the exceptional nature of federal courts deferring to parallel state proceedings. *Day v. Union Mines Inc.*, 862 F.2d 652, 658 (7th Cir.1988); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir.1985). *See also Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 25–26, 103 S.Ct. 927, 937, 941–942, 74 L.Ed.2d 765 (1983). "While such an exception is necessary in a few instances to ensure judicial economy and deter abusive 'reactive' litigation, a tension exists between this judge-made doctrine and the explicit statutes conferring federal jurisdiction. Congress has made a considered judgment that federal jurisdiction is appropriate in certain classes of cases. Where the statutory prerequisites are met, courts should be extremely wary about refusing to hear a case based on sometimes impalpable notions of efficiency." *Medema*, 854 F.2d at 213.

The United States Supreme Court in *Colorado River* advanced a two-pronged test to determine when this deference to a parallel state action should occur. First, the district court must determine whether the cases are "parallel." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988). Two proceedings are considered parallel if " 'substantially the

---

**2.** The Seventh Circuit used the *Colorado River* "exceptional circumstances" test in an appeal arising out of a diversity suit in which the

plaintiff sought damages, rather than declaratory relief. *Voktas, Inc. v. Central Soya, Co., Inc.*, 689 F.2d 103 (7th Cir.1982).

same parties are contemporaneously litigating substantially the same issues in another forum.' " *Id.* at 1288 (quoting *Calvert Fire Ins. Co. v. American Mut. Re-insurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979) ("Calvert IV")).

■ This Court concludes that the California and Wisconsin declaratory actions are parallel. Both actions seek a declaration of the insurers' obligations as to the punitive damages award in the Jones action. Since American Motorists has joined the California declaratory action as one of the "Doe" defendants, the parties in the two actions are similar; the only difference is that the Joneses are defendants in the California declaratory action, while they are absent from the Wisconsin declaratory action. This Court agrees with Johnson's position that the Joneses are not indispensable parties under F.R.Civ.P.Rule 19. They are not parties to the insurance contracts, and a determination can be made as to the obligations of the insurers as to the punitive damage award without the presence of the judgment creditors. *County of Wyoming, N.Y. v. Erie Lackawanna Railway Co.*, 360 F.Supp. 1212, 1215 (W.D.N.Y. 1973), *aff'd*, 518 F.2d 23 (2d Cir.1975). Except for the Jones cross-complaint for tortious damages, the nature of which by the Jones's admission is "wholly separate and distinct from the issues raised by the declaratory relief action" and on which the Joneses seek a separate trial in the alternative, the parties in and nature of the two declaratory actions are synonymous. Thus, this Court concludes that the California state and Wisconsin federal declaratory actions are actually parallel.

The second prong in the *Colorado River* analysis is a multifactor balancing test. Under this test, this Court must "consider a number of factors that might justify a decision to refrain from exercising jurisdiction over an action." *LaDuke*, at 1559. The Seventh Circuit recognized ten such factors in *Lumen Constr.*, 780 F.2d at 694–95: "1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the

order in which jurisdiction was obtained by concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim." *LaDuke*, at 1559. District courts have been advised that their decisions should not be based on a "mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Courts should apply these factors in a "pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939.

The first of these factors is inapplicable. As to the second factor of inconvenience of the federal forum, Johnson argues that this factor clearly favors Wisconsin as the proper forum, as: (1) Johnson is a Wisconsin citizen; and (2) the insurance policies at issue were negotiated and accepted here and the premiums were paid in this state. The excess insurers reply that all parties to the Wisconsin declaratory action have sufficient contacts with California. Considering this, as well as the presence of the Joneses, the excess insurers argue that California is the more convenient forum. American Motorists advances that although not an inconvenient forum for the insurers, litigating in Wisconsin federal court would be inconvenient for the Joneses. This Court has already pointed out, however, how the Joneses as judgment creditors do not have a great stake in the declaratory determination to be made as to contract interpretation, nor is their cross-complaint an integral, nonseverable part of the litigation. Although not in a situation where "the relevant courthouses are only a few blocks apart," *Rosser*, 864 F.2d at 1308, by the insurers own admission, Wisconsin is not an inconvenient forum.

The third factor, the desirability of avoiding piecemeal litigation, is a concern and supports the issuance of a stay. " 'Piece-

meal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results....' " *Day v. Union Mines Inc.*, 862 F.2d 652, 659 (quoting *American Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988)). "[T]he possibility of conflicting results is very present here since both state and federal cases depend on interpretation of the same contract[s]." *Day*, 862 F.2d at 659. Further, the Seventh Circuit in *LaDuke* raised two problems that can occur in a situation with simultaneous suits: "First, a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first. Second, the possibility exists that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums." *LaDuke*, at 1560 (footnote omitted). *See also Lumen Constr.*, 780 F.2d at 694. Both of these problems will appear to exist if these two suits proceed simultaneously.

The fourth factor is the order in which jurisdiction was obtained by the concurrent forums. Although the California state declaratory action was filed first, Johnson was not served in that action until 9 days after it had commenced the Wisconsin federal declaratory action. Further, there is no evidence that Johnson knew of the pending state declaratory action when it filed this federal declaratory suit. "Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Coatings*, 611 F.Supp. at 960 (quoting *Moses*, 460 U.S. at 21, 103 S.Ct. at 939). Therefore, the order in which the suits were filed does not help this Court determine the propriety of a stay.

The fifth factor is the source of governing law. This issue seems to be at the storm-center of this lawsuit. Although it is an issue as to the merits that will not be addressed here, Wisconsin and California state law differs regarding the insurability of punitive damages in a possibly disposi-tive way. Whether the suit commences in California state court as a state declaratory action, or in Wisconsin federal court as a diversity action for a declaratory judgment under 28 U.S.C. § 2201, state law will govern. When all issues in an action are to be governed by state law, the fifth factor is in favor of a *Colorado River* stay. *Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir.1988); *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 696 (7th Cir.1985) (citing *Cannady v. Valentin*, 768 F.2d 501, 503 (2d Cir.1985)); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 720 (7th Cir.1982); *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir.1982). *Cf. Medema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir.1988); *Illinois Bell Telephone Co. v. Ill. Commerce Com'n*, 740 F.2d 566, 570 (7th Cir.1985). The choice of law determination between California and Wisconsin law as to the issue of insurability of punitive damages is one of state, not federal law. This factor supports staying the federal action pending the outcome of the California declaratory action.

The sixth factor is the adequacy of the state-court action to protect the federal plaintiff's rights. Despite Johnson's apparent fear of local bias, there is no reason for this Court to conclude that Johnson's interests would not be fairly adjudicated in the state court. *See LaDuke*, at 1560; *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 697 (7th Cir.1985). The seventh factor is the relative progress of the state and federal proceedings. This Court is aware that a hearing was held as to Johnson's motion to stay in the California declaratory action on August 11, 1989, in which the California state court denied Johnson's motion to stay the action pending in California. Johnson has commenced discovery in this action, having taken three depositions, and has filed for summary judgment. This Court is unable to state that "the state court proceeding has progressed considerably further than the federal case." *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 696 (7th Cir.1985). *Cf. Illinois Bell Telephone Co.*

*v. Ill. Commerce Com'n,* 740 F.2d 566, 570 (7th Cir.1984) (at time federal suit filed, state suit had been in progress for one year). Thus the seventh factor does not argue for or against a stay for the purpose of judicial economy.

The presence or absence of concurrent jurisdiction is the eighth factor. *See Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978). Because jurisdiction is not exclusively federal or state, this factor does not advance the analysis. The ninth factor is the availability of removal. The Seventh Circuit first gave this factor weight in *Microsoftware Computer Systems, Inc. v. Ontel,* 686 F.2d at 537. *See also LaDuke,* at 1560–1561. The court found that "[t]he ordinary justification for having jurisdiction over diverse citizens is not present." *Ontel,* 686 F.2d at 537. In ordering that a stay should have been granted, the court found that the plaintiff, Microsoftware Computer Systems ("MCS"), which argued against the stay pending the outcome of the parallel state proceeding, escaped no bias against out-of-staters by filing its action in federal court in Chicago since it was an Illinois corporation. It stated that "[i]f MCS were concerned by prejudice in the New York state courts, it could have removed the state court action to a federal court in New York. Indeed, any interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second." *Id.* In the case at bar, Johnson attempted to remove the action to federal court in California on April 27, 1989, but was unable to because its codefendants, the Joneses, were California residents. Thus *Ontel* is not directly on point on this factor, as Johnson is unable to remove, as was MCS.

An instructive analysis on the removability factor as it leads to a conclusion regarding a stay is contained in Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of* Colorado River, 44 U.Chi.L.Rev. 641, 666–71 (1977). This article states that in "reactive" litigation (suit filed by one who is a defendant in prior proceeding based on the same factual controversy), if the state suit is removable, the interests of judicial economy dictate that the federal suit should be stayed or dismissed, forcing the state defendant to use the removal procedure under 28 U.S.C. § 1441(a). The rationale behind this is two-fold: Since access to federal court is not foreclosed, this result does not involve an abdication of the duty to exercise jurisdiction; and, although the state defendant is entitled to a federal forum, the avoidance of duplicative litigation justifies declining the exercise of concurrent jurisdiction, forcing the state defendant to use the more efficient and convenient method of removal. *See* Note at 667. Johnson cannot remove this suit to federal court in California, as the Joneses are codefendants, and doing so would destroy complete diversity. Therefore, the second part of the article's analysis on this issue is applicable.

If the state plaintiff's claim is not removable and the state defendant brings an action within the original jurisdiction of the federal court, as is true in the case at bar, the article states that the propriety of a stay depends on whether there is an articulable policy behind the unavailability of removal that indicates that the general policy underlying the jurisdictional basis invoked by the state defendant is not important in the particular case. This is because where the state defendant simply wishes to litigate the state plaintiff's claim in a federal forum, and since removal is unavailable, brings an action for declaratory relief to that effect, it is not difficult to identify a policy judgment in the restrictions on removal that might counterbalance the obligation to exercise jurisdiction. *See* Note at 667; *see also Day v. Union Mines Inc.,* 862 F.2d 652, 660 (7th Cir.1988) (district court stayed federal proceedings between shareholders and purchasing corporation concerning interpretation of payment provision of stock purchase agreement pending resolution of state court litigation between the parties; shareholders tried to remove and failed because they could not show complete diversity; court states that it "would be defying the policies behind the requirement of complete diversity and the Section

1441 rule for removal by not granting the Shareholders a right to a federal forum as well as the state forum they originally invoked and still have.").

Thus, if the state plaintiff's claim involves more than $50,000, the state plaintiff and state defendant are diverse, removal is unavailable because the state suit involves other defendants not diverse to the state plaintiff, and the state plaintiffs' claim is not separable and independent,[3] the policy that justifies nonremovability—the judgment that the state forum is adequate—could counterbalance the obligation to exercise jurisdiction in a reactive federal suit brought by the state defendant seeking to adjudicate the state plaintiff's claim in a federal forum. *See* Note at 668. Therefore, in a determination of why removal is unavailable, if it can be said that the case is nonremovable because of an expressed policy judgment that the state forum is adequate to decide the controversy, and therefore that the policies underlying the jurisdictional grant invoked by the federal plaintiff are not very strong, then the federal action should ordinarily be stayed. *See* Note at 671.

This analysis applied to the case at bar does not necessarily lead to the conclusion that this federal action should be stayed, however. Under the article's reasoning, the propriety of a stay depends on whether there is an articulable policy behind the unavailability of removal that indicates that the general policy underlying the jurisdictional basis invoked by the state defendant is not important in the particular case. In this case, no articulable policy is preventing removal; only the fact that in the California declaratory action the excess insurers sued the Joneses as well as Johnson is keeping Johnson from removing the case to federal court there. This is not a problem in the Wisconsin federal declaratory suit, as the Joneses are not a party to this action. This Court has already voiced its opinion that it does not see why the judgment creditors need be party to the parallel suits interpreting the contracts and applicable state law as to the insurability of puni-

tive damages. Thus, this Court does not find an expressed policy judgment of nonremovability triumphing over the policies underlying the jurisdictional grant invoked by the federal plaintiff, necessitating that the federal action should be stayed. Further, although the motivation in the case at bar may not be just to get the case into federal court, but into Wisconsin federal court because of the nature of Wisconsin law as to the issue of insurability of punitive damages, the nonremovability policy would still not counterbalance the obligation to exercise jurisdiction in this situation. In fact, nonremovability in this case is not predicated on a judgment that the state defendant does not require protection from possible local bias because the possibility of bias is minimal when the parties aligned on one side of a state suit include among their members a nondiverse party. It is merely based on the happenstance that the excess insurers sued the Joneses in addition to Johnson in the California state declaratory action; the fear of local bias is still present, as Johnson is a Wisconsin-based corporation. Consequently, this Court concludes as to the ninth factor that the policies underlying the jurisdictional grant invoked by the federal plaintiff are not overcome by the expressed policy judgment of nonremovability.

As to the tenth factor, the vexatious or contrived nature of the federal claim, this Court is not convinced that Johnson is acting in a defensive manner that rises to the level that other courts have judged actions to be instituted without sufficient grounds to cause annoyance. *See Day v. Union Mines Inc.*, 862 F.2d at 660 (citing *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.*, 459 F.Supp. 859 (N.D.Il.1978), *aff'd*, 600 F.2d 1228 (7th Cir.1979) ("plaintiff Calvert's filing of the federal suit based on the same issues already decided in state court 'was intended to delay the proceedings in the state court and to obtain two adjudications with two possible appeals of the same legal issue.' 459 F.Supp. at 862."). The fact that Johnson was not served in the California state declaratory suit until 9 days after

---

**3.** *See* Note at 668 n. 173.

it had filed the Wisconsin federal declaratory action speaks to this factor as well.

Therefore, this Court finds three factors supporting a stay of this federal declaratory action: (1) the third factor, the desirability of avoiding piecemeal litigation, especially considering the problems the Seventh Circuit raised in *LaDuke* of trying to accelerate or stall proceedings to get a ruling in its favor, and the possibility existing that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums; (2) the fifth factor, the source of governing law, as the Seventh Circuit has held that when all issues in an action are to be governed by state law, the fifth factor is in favor of a *Colorado River* stay; and (3) the sixth factor, the adequacy of the state-court action to protect the federal plaintiff's rights, as, despite the fear of local bias, there seems no reason for this Court to conclude that Johnson's interests would not be fairly adjudicated in the state court. All of the other factors are either inapplicable or do not argue for or against the propriety of a stay.

Keeping in mind that district courts have been advised that their decisions should not be based on a "mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937, and that courts should apply these factors in a "pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939, this Court concludes that a stay of this federal declaratory action is proper. This Court finds alternative grounds in both the *Brillhart* and *Colorado River* analyses for a stay of the federal declaratory action. This Court is not convinced that the "exceptional circumstances" test of *Colorado River* would be met were this case not a diversity-declaratory judgment action. Nevertheless, under the reasoning of both *Brillhart* and *Colorado River*, this Court finds adequate grounds, both factual and legal, to deem a stay of this federal declaratory suit the appropri-

ate action. In this case, the similarity between the state court claims and the federal claims clearly demonstrates that the "state-court litigation will be an adequate vehicle for the complete and prompt resolution between the parties." *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. at 943; *accord, Lumen Constr.*, 780 F.2d at 695–96.

## VI.  *CONCLUSION*

For all the above reasons, it is the ORDER of the Court that: (1) plaintiff's motion to file a sur-reply brief is GRANTED; (2) plaintiff's motion to strike the supplemental affidavit of American Motorists is DENIED; and (3) the moving defendants' motion to stay this action is GRANTED.

IT IS ORDERED that because there appears to be no reason at this time to maintain the file as an open one, for statistical purposes the Clerk of Court is instructed to submit a JS–6 form to the Administrative Office of the United States Courts, thereby closing the case for statistical purposes.

IT IS FURTHER ORDERED that nothing in this order shall be considered a dismissal or disposition of this matter.

SO ORDERED.