RIPPLE, Circuit Judge,
concurring in part and dissenting in part.
I join the majority opinion on several issues, but I cannot agree with the majority’s discussion and conclusion regarding abstention under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). I therefore must respectfully dissent.
A.
I concur with my colleagues on several issues. I agree that the statutory bar against citizen suits in RCRA is not jurisdictional. The majority opinion also correctly holds that the statutory bar does not apply to Count II of the plaintiffs’ complaint, seeking relief under the “endangerment” provision of RCRA, 42 U.S.C. § 6972(a)(1)(B).
Regarding the plaintiffs’ claim under the “violations” provision of RCRA, 42 U.S.C. § 6972(a)(1)(A), I concur that the first state action, filed by IDEM in October 2008, does not completely bar this claim. That the focus of the first IDEM suit is narrower than the action that the plaintiffs sought to bring is evident from the plaintiffs’ denial by the state court to intervene and from IDEM’s filing of a second suit. The second IDEM suit, as the majority concludes, was filed too late to constitute a bar to the plaintiffs’ federal suit.
I also agree with the majority’s candid admission that the precise contours of the IDEM suits are difficult to ascertain. More importantly, the exact contours of the relief that might be granted in the IDEM suits are difficult to predict. Finally, I concur that the district court abused its discretion in finding abstention under the Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), doctrine appropriate.
B.
Where I part company from my colleagues is with respect to their application of the Colorado River abstention doctrine. Even here, my disagreement is not total. Nevertheless, I view the position taken by my colleagues to be an overly rigid one, which, under the circumstances of this case, produces a result contrary to the overall intent of RCRA and a procedural straitjacket for district courts in future cases.
*508 The starting point must be the applicable standard of review. It is clearly established that the applicable standard of review for our scrutiny of a district court’s decision to invoke the Colorado River abstention doctrine is abuse of discretion. Prop. & Cas. Ins. Ltd. v. Cent. Nat’l Ins. Co. of Omaha, 936 F.2d 319, 321 (7th Cir.1991); see also Will v. Calvert Fire Ins. Co., 437 U.S. 655, 664, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). Admittedly, given this standard’s rhetorical cast, it is inherently vague and therefore susceptible to application with different degrees of vigor. However, at bottom, it simply requires that appellate courts allow district courts a significant amount of discretion to choose among the options that we might expect a reasonable trial jurist to consider in the situation at hand. United States v. Depoister, 116 F.3d 292, 294 (7th Cir.1997).
That said, there can be no doubt that abstention must be invoked with great care and circumspection because it constitutes an abnegation of the authority given the federal courts by statute. See Colorado River, 424 U.S. at 813, 96 S.Ct. 1236. This hortatory principle is helpful and, indeed, essential, to our understanding of the abstention doctrine. That said, the principle does not become a working rule of decision until we focus on the relationship between the particular statutory cause of action and the particular abstention doctrine at issue. See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 359-60, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).
This task is especially crucial, and nuanced, when the abstention doctrine at issue is the Colorado River doctrine. This doctrine, as it has been developed in federal jurisprudence over the last several decades, is a particularly flexible tool that is far more susceptible to harmonization with substantive statutory schemes than some of its abstention cousins. Most notably, it does not require, in its usual application, a total abnegation of federal jurisdiction. Instead, it simply allows a prudent exercise of discretion in order to postpone federal judicial action that might intrusively impair the work of state courts or result in duplication of effort or even in conflicting determinations. See Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 698 (7th Cir.1986).
As I have indicated at the threshold of this opinion, there is no question that, given the dilatoriness of IDEM in filing the second suit in state court, the plaintiffs have the right to file, and to maintain, their federal action. That is not the issue we must resolve. Rather, we must determine whether the district court abused its discretion when it determined that the two state court actions ought to proceed without a simultaneous proceeding in federal court.
It is clear that, with respect to at least one aspect of its determination, the district court did abuse its discretion because it dismissed the federal suit. Our precedent makes clear that a stay is the appropriate course of proceeding when Colorado River abstention is invoked. Lumen Constr., Inc., 780 F.2d at 698. But does this misstep necessarily render the remainder of the district court’s analysis an abuse of discretion? This inquiry requires a pragmatic assessment of the circumstances and a careful examination of the policies that animate the RCRA statute.
The test articulated for the invocation of the Colorado River doctrine requires parallel litigation and extraordinary circumstances. The district court’s conclusion that both requirements are present and that abstention was the better course of proceeding was certainly one of the reasonable choices open to the district court. Regarding parallel litigation, we have nev *509 er required that the parties in the case be identical. See Clark v. Lacy, 376 F.3d 682, 686 (7th Cir.2004). Here, no one has suggested that the state, in its role as protector of the health and safety of its citizens, has an interest in any way adverse to that of the plaintiffs. Just as importantly, all of the federal and state actions involve the same plot of land, the same alleged activity and the removal of essentially the same waste from that land. Exceptional circumstances, which counsel in favor of abstention, also exist.[1] Although the plaintiffs have alleged claims under RCRA, the primary source of law is state law: Indiana’s Solid Waste Management Plan, enacted pursuant to RCRA. The state court also first obtained jurisdiction, and at least one of the state court proceedings, the second suit filed by IDEM, has progressed relatively further than this federal case; indeed, the parties in the state case have submitted an agreed order to the state court.
Additionally, the state proceedings seem adequate to address all of the plaintiffs’ interests. Neither the parties nor the majority have identified a federal interest that is in any way impaired if the federal action is stayed pending the outcome of the state action. The district court was entitled to conclude that the concern in RCRA for prompt attention to endangerments is met by the two state court proceedings addressing VIM’s operations. The plaintiffs claim that the federal suit involves a wider range of waste, but the contours of the state actions are not entirely clear. Nor is it apparent that the neat analytical boxes into which the plaintiffs have categorized the waste for purposes of identification are, as a matter of fact, substantially different from the objectives of the two state suits. How the plaintiffs’ “endangerment” claim differs substantively from the claims of IDEM in the state proceedings is also not shown. It simply is not clear what, if anything, will be left for the federal suit to undertake if the state prevails, in any substantial way, in the state actions. Nor is it evident that there will be a need for any substantial additional remediation after the state actions have run their course.
The majority opinion emphasizes that it gives no weight to the threat of. piecemeal litigation. In doing so, the majority focuses solely on that section of the RCRA statute that provides for a citizen suit when the state has been nonresponsive or inadequately responsive to the citizens’ complaint. See 42 U.S.C. § 6972(b). Although this section no doubt ought to be the primary focus of our inquiry, in determining the propriety of an abstention decision, it is especially important to read that section within the context of the entire statutory scheme. When we read that section in the context of the entire RCRA statute, two points become especially salient to our analysis. First, the statutory scheme places great emphasis on permitting the state government to manage environmental problems that endanger the *510 health and safety of its residents.[2] This concern is especially important when, as here, it is the state that has developed and implemented the waste disposal plan and implements it through state law.[3] Second, the situation before us is hardly typical of a RCRA citizen suit in which a citizen makes application to the state for relief and is denied, thus triggering the right to a citizen suit under RCRA. Here, the state had in fact commenced one action focused on at least part of the violation and, albeit after the deadline stated in RCRA, commenced another action aimed at abating more of the waste of which the plaintiffs complain. Therefore, the potential for duplicative proceedings, which could result in confusion and waste is a concern that militates towards applying abstention.
Our prior precedent and the holdings of sister circuits do not constrain application of the Colorado River abstention doctrine in a federal citizen suit under RCRA.[4] Courts previously have held abstention under the Burford doctrine inappropriate for federal suits under RCRA. See Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd., 633 F.3d 20, 31-32 (1st Cir.2011); PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 619 (7th Cir.1998). However, abstention under Burford requires a dismissal, not a stay, of the case. See Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc., 551 F.3d 587, 595 (7th Cir.2008). As discussed, the dismissal of this case is inappropriate because the plaintiffs have met the statutory requirements to bring a federal suit. Accordingly, those opinions finding abstention under the Burford doctrine inappropriate are not relevant for an examination of whether abstention under the Colorado River doctrine is appropriate. Those opinions, which have found Burford abstention inapplicable, do not address abstention under the Colorado River doctrine. In fact, they explicitly note that although abstention under Burford is inapplicable, abstention under other doctrines might still be appropriate. See Chico, 633 F.3d at 26 n. 10 (“Because the district court based its *511 decision solely on the Burford strain of abstention and [the defendant] has not argued for abstention under Colorado River in this appeal, we do not address the applicability of the Colorado River doctrine here.”); PMC, Inc., 151 F.3d at 619 (noting that “there may be room for applying the doctrines of abstention ... in cases in which a state has a formal administrative proceeding in progress that the citizens’ suit would disrupt”).
The majority opinion contends that because the plaintiffs raise an exclusively federal claim — the “endangerment” claim under § 6972(a)(1)(B) — abstention is inappropriate based on Medema v. Medema Builders, Inc., 854 F.2d 210, 215 (7th Cir. 1988). This court in Medema, however, made clear that it was not establishing a categorical rule that Colorado River abstention is forbidden whenever the federal case involves an exclusively federal claim. Id. (“[W]e do not mean to create a monolithic rule subject to no exceptions.”). In Medema, we contemplated that “perhaps in rare circumstances,” abstention under Colorado River would be appropriate even for exclusively federal claims. Id. at 212. Unlike Medema, this case involves a statute that emphasizes federal-state cooperation; there is an absence of any showing that the federal cause of action or the rights of the plaintiffs would be impaired by a stay; and it is not clear that the remedies sought in the state proceedings are substantively different from those requested in the federal case.
What does seem apparent in this case is that simultaneous litigation of the actions and simultaneous supervision of the remediation process by state and federal courts will be a recipe for delay, confusion and wasted judicial resources. These concerns were the precise motivations in Colorado River[5] and it is not clear how any of the plaintiffs’ interests are impaired if the federal case is stayed. Accordingly, I must respectfully dissent from removing from the district court’s discretion the decision to stay the plaintiffs’ case upon invoking abstention under the Colorado River doctrine.

. As quoted by the majority, factors to consider in determining extraordinary circumstances include:
1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiffs rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.
Tyrer v. City of South Beloit, 456 F.3d 744, 754 (7th Cir.2006) (citation and quotation marks omitted).

. The stated objectives of RCRA reflect a vision of state-federal cooperation. See 42 U.S.C. § 6902(a). Specifically, states would create and implement, under RCRA, comprehensive plans regulating solid waste. See 42 U.S.C. § 6941.

. See Indiana’s Solid Waste Management Plan, approved by the EPA and codified in the Indiana Code in section 13-20 and in Title 328 of the Indiana Administrative Code.

. The majority opinion cites to five district court decisions finding abstention under the Colorado River doctrine inapplicable in a federal suit under RCRA or the Clean Water Act ("CWA”). Op. at 502-03. Three of these opinions found abstention under the Colorado River doctrine inapplicable because only the federal case raised environmental claims under RCRA or CWA, and the state case involved only tort claims. See Snellback Prop., L.L.C. v. Aetna Dev. Corp., 2009 WL 1606945, at ‘"l (N.D.Ill. June 9, 2009); Spillane v. Commonwealth Edison Co., 291 F.Supp.2d 728, 731 (N.D.Ill.2003); Mut. Life Ins. Co. of New York v. Mobil Corp., 1998 WL 160820, at *5 (N.D.N.Y. Mar. 31, 1998). In contrast, the state proceedings in this case deal with violations under Indiana’s Solid Waste Management Plan, similar to the federal suit. In fact, it is not clear whether the federal claims are actually substantively different from IDEM’s claims in state court.
In the remaining two cases, both the state and federal suits involved environmental claims. In both cases, however, the state agency failed to file its suit in state court before the federal case — a point which the district court emphasized. See Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Envtl. Prot., 27 F.Supp.2d 380, 385 (E.D.N.Y.1998) (noting that the state agency "had the opportunity to take the lead in enforcing the prescribed standards, but declined to do so”); Pirgim Pub. Interest Lobby v. Dow Chem. Co., 1996 WL 903838, at *6 (E.D.Mich. Feb. 16, 1996) (finding "the order in which jurisdiction was obtained is of the greatest importance”). Here, IDEM filed its first suit prior to the federal suit.

. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (noting concerns for "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation” (citation and quotation marks omitted)).